# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISION | |
| Plaintiff, | Civil No. _____ |
| v. | |
| AMERISTAR, LLC, | |
| Defendant, | |
| and | |
| AMERISTAR MK Ltd. Liability Company, FRED W. FREITAG IV, and HIGHLINE GOLD INC. a/k/a HIGHLINE GOLD LLC a/k/a HIGHLINE GOLD CORPORATION LLC, | |
| Relief Defendants. | |

## DECLARATION OF JOHN HERMANSEN

I, John Hermansen, declare under penalty of perjury under the laws of the United States of America, in accordance with 28 United States Code § 1746, that the following statements are true and correct, and that I am over 18 years of age and I am competent to testify to the matters stated herein:

1.      I am a former woodworker who lives in the state of Illinois. I retired three years ago.

2.      On or about March 2024, I saw from either an internet search or Facebook advertisement an investment opportunity with a company named AmeriStar Investment ("AmeriStar").

Exhibit

35

3.      From the internet search or Facebook advertisement, I was directed to ameristarinvestment.com (the "AmeriStar Website"). I reviewed information on the AmeriStar Website in making my decision to invest. I decided to invest because AmeriStar offered a Certificate of Deposit ("CD") with a high rate of return which was FDIC-insured.

4.      I also looked up the company on the Securities and Exchange Commission's ("SEC") website. I found a form that listed "Eddie Britton" as the company's principal, which was consistent with materials I reviewed on the AmeriStar Website. That consistency gave me comfort when deciding to invest in AmeriStar.

5.   The AmeriStar Website gave me an option to create a username and password to open an account with AmeriStar and view an investor portal. Through this investor portal, I was able to select a particular bank with which to purchase a CD. On or about March 21, 2024, I selected one CD with Synchrony Bank that required an investment of $50,000. The Synchrony transaction did not seem to go through, so I inadvertently selected a second CD with Wells Fargo that required an additional investment of $50,000. I executed bank transfers for each CD within an hour of each other.

6.      I am not an accredited investor. After I transferred funds to AmeriStar, I recall asking an AmeriStar representative whether I needed to be accredited to invest. The representative did not answer my question at the time. At no point in time did anyone at AmeriStar take any steps to verify whether I was accredited.

7.      I received both the Wells Fargo and Synchrony CD subscription agreements on March 25, 2024, several days after I already transferred funds for these CDs. I signed the Synchrony CD subscription agreement through DocuSign.

8.      I never signed the Wells Fargo CD subscription agreement. A copy of this unsigned subscription agreement is attached as **Exhibit A**. Since my selection of this CD was unintentional, I hoped to receive a refund of this investment. Despite reaching out to AmeriStar via email to inform AmeriStar of the mistake and request a refund, no one from AmeriStar responded to me.

9.      When I made my investments, I recall that AmeriStar used a company called InvestNext that was integrated into the investor portal. On May 2, 2024, AmeriStar informed me via email that InvestNext was no longer integrated into the investor portal. A copy of an email thread containing this message is attached as **Exhibit B**. When InvestNext was no longer integrated in the investor portal, I was no longer able to access the Synchrony Bank subscription agreement that I previously signed.

10.     After InvestNext was no longer available through the investor portal, I became concerned about the status of my investment and began calling AmeriStar more frequently. I drove by the address listed as AmeriStar's headquarters in Vernon Hills, Illinois. The address appeared to be a vacant building. On May 2, 2024, I informed AmeriStar that their location appeared vacant. Exhibit B at 1.

11.     On May 7, 2024, I received an email from support@ameristarinvestment.com stating that AmeriStar had "come to the decision to close [my] account, effective May 08, 2024" which was "in no way a reflection of [my] actions but rather a part of [AmeriStar's] ongoing efforts to optimize [AmeriStar's] services and compliance with regulatory requirements." The email stated that if I had a balance in my AmeriStar account, which I did, AmeriStar would issue a refund check to me. Based on the balance of my AmeriStar account, I expected a refund check of $100,957.00, which represented my investment plus interest to date according to the investor

portal. I replied to this email by informing AmeriStar of the address to which I wanted the refund sent. I continued to email AmeriStar to ask about the status of my refund check. AmeriStar's last email reply to me was on May 28, 2024, where a representative stated that my refund was still going "through compliance" and that AmeriStar "has up to 90 days" to provide the check. A copy of an email thread containing this message is attached as **Exhibit C**.

12.    I never received a refund check from AmeriStar. I continued to email AmeriStar at support@ameristarinvestment.com, and continued to call AmeriStar's office line. I left AmeriStar voicemails that have not been returned. In response to an email I sent to support@ameristarinvestment.com on July 2, 2024, I received a reply from mailer-daemon@googlemail.com with a message that the "address could not be found." **Exhibit C** at 7.

13.    I again tried to call AmeriStar's main number on or about the week of August 5, 2024. I received an automated message stating that the number has been disconnected.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 8/15/2024 in Island Lake Illinois, United States.

John Hermansen

# EXHIBIT A



# Subscription Agreement

To: AmeriStar, LLC

1712 PIONEER AVE STE 111973
CHEYENNE, WY 82001

**Investment Product Name:**   Wells Fargo 13 Months Certificate of Deposit

**Amount Invested:**   $50,000.00

**Interest Rate:**
           11.33%

Dear Investor (s),

**1. Subscription.** The undersigned hereby subscribes for Notes of AmeriStar, LLC (the "Company"), a Wyoming Limited liability company, and agrees to invest to the Company Ten Thousand ($10,000) Dollars per Note for an aggregate investment total of **$ ___50,000___** (the "Investment Amount") upon the terms and subject to the conditions (a) set forth herein, and (b) described in the Confidential Private Placement Memorandum ("Private Placement Memorandum") together with all exhibits there to and materials included therewith, and all supplements, if any, related to this offering. The minimum investment amount is Ten Thousand ($10,000) Dollars, but the Company has the discretion to offer fractional Notes for loans less than the minimum.

**2. Note Offering.** The Company is offering a minimum of TWO HUNDRED (200) and up to a maximum of Ten Thousand (10,000) Notes at Ten Thousand ($10,000) Dollars per Note, with a minimum subscription of one (1) Note (the "Offering"). The minimum aggregate loan to the Company will be Ten Thousand ($10,000) Dollars and the maximum aggregate loan to the Company from this Offering will be Ten Million ($10,000,000) Dollars. The Offering is being made to a limited number of investors pursuant to an exemption available under the Securities Act of 1933 (the "Act"), specifically Rule 506(b) promulgated under Regulation D, and under certain other laws, including the securities law of certain states.

SEC-HermansenJ-E-0000031



**3. Documents to be delivered.** The undersigned is delivering to the Company executed copies of this Subscription Agreement (the "Agreement"), the Note(s), Offeree Questionnaire, and all other applicable exhibits and documents (the "Subscription Documents"). The Subscription Documents should be delivered via electronic copy. The undersigned understands and agrees that he or it will not become a "Holder" of the Note(s) and the Company shall not become a "Maker" of the Note(s) unless and until the Agreement and Note(s) are executed by the Company.

**4. Making of Loan Amount.** The undersigned, simultaneously with the delivery of the Subscription Documents to the Company, hereby tenders to the Company the Loan Amount by wire transfer or bank transfer to the banking coordinates they receive from the secure email after confirmation of the subscription service on the https:/www.ameristarinvestment.com website.

**5. Acceptance or Rejection of Subscription.** The undersigned understands and agrees that the Company reserves the right, exercisable in its sole discretion, to accept or reject any subscription, in whole or in part, for any reason and that the undersigned will be notified by the Company as promptly as practicable as to whether his or its subscription has been accepted or rejected. If the undersigned's subscription is accepted, in whole or in part, by the Company, the Company will execute this Agreement and the Note(s) and return them to the undersigned. If this subscription is rejected by the Company, either in whole or in part, all funds, in the case of a rejection of the subscription in whole, or those funds representing the amount of the subscription not accepted by the Company, in the case of a rejection of the subscription in part, will be returned to the undersigned as promptly as practicable. If this subscription is rejected in whole by the Company, this Agreement shall be null, void and of no effect. The undersigned does not have the right to withdraw or revoke his or its subscription during the Offering period, except as provided by certain state laws, except that if more than thirty (30) days shall have passed from the date the Company received completed and executed Subscription Documents and the Loan Amount from the undersigned (the "Acceptance Period"), and the Company has not accepted the subscription during the Acceptance Period, the undersigned may withdraw his or its subscription at any time after the Acceptance Period up until such time that the Company subsequently decides, in its sole discretion, to accept the subscription in whole or in part.

**6. Offering Period.** The Company may close in whole or in part or terminate this Offering under any of the following conditions:
1. upon reaching the minimum offering amount of Ten Million ($10,000,000) Dollars.
2. Upon receipt of the maximum offering subscription amount of Two Hundred Million ($200,000,000.00) Dollars
3. Notwithstanding the above, this offer shall terminate one (1) year from the date of this Private Placement Memorandum; or on such later date not exceeding thirty (30) days thereafter to which the Company, in its sole discretion, may extend this Offering.

SEC-HermansenJ-E-0000032



**7. Closing of the Investment.** The Note(s) subscribed for herein shall not be deemed made by the Company or held by the undersigned until this Agreement and the Note(s) have been countersigned by the Company, and until the funds delivered by the undersigned to the Company with the Subscription Documents have been deposited in the Holding Account and have been cleared by the applicable bank of the Company (the "Effective Date"). Upon the Effective Date, (a) the undersigned shall have invested to the Company the Investment Amount, (b) the undersigned shall become the Holder and the Company shall become the Maker of the Note(s) subscribed for by the undersigned, and (c) both the undersigned and the Company shall be bound by the terms of the Private Placement Memorandum and the Subscription Documents and any other undertakings described herein.

**8. Representations and Warranties.**

(a) The Company hereby represents and warrants as follows:

(i) The Company is a Limited liability company duly organized, validly existing and in good standing under the laws of the State of Wyoming and has the requisite corporate power and authority to own, lease and operate its properties and to carry on its business as now being conducted;

(ii) This Agreement constitutes the valid and binding obligation of the Company enforceable against the Company in accordance with its terms (except as such enforceability may be limited by applicable bankruptcy, insolvency, moratorium, reorganization or similar laws from time to time in effect which affect creditor's rights generally and by legal and equitable limitations on the availability of specific performance and other equitable remedies under or by virtue of this Agreement). The Company has all requisite power and authority, corporate and other, to execute and deliver this Agreement and the Note(s) and to consummate the transactions contemplated hereby. All persons who have executed this Agreement and the Note(s) on behalf of the Company have been duly authorized to do so by all necessary corporate action. Neither the execution and delivery of this Agreement and the Note(s) nor the consummation of the transactions contemplated hereby will (A) violate any provision of the Certificate of Incorporation or Operating Agreement of the Company, as currently in effect; (B) violate any judgment, order, injunction, decree or award against, or binding upon, the Company or the securities, assets, properties, operations or business of the Company; or (C) violate any law or regulation applicable to the Company or to the securities, assets, properties, operations or business of the Company.

SEC-HermansenJ-E-0000033



(b) In order to induce the Company to accept the subscription made hereby, the undersigned hereby represents and warrants to the Company as follows:

(i) The undersigned has received the Private Placement Memorandum and the Subscription Documents. The undersigned has read and understands the Private Placement Memorandum and Subscription Documents and the information contained in those documents concerning the Company and this Offering or has caused his or its representative to read and examine the Private Placement Memorandum and Subscription Documents. The undersigned has relied only on the information about the Company contained in these documents and his or its own independent investigation in making his or its subscription. The undersigned understands that the Notes will be issued with the rights and subject to the conditions described in the Private Placement Memorandum and Subscription Documents;

(ii) The undersigned is familiar with the terms and conditions of the Offering and is aware that his or its investment involves a degree of risk and the undersigned has read the section in the Private Placement Memorandum titled "Risk Factors."

(iii) The undersigned hereby specifically accepts and adopts each and every provision of this Agreement and acknowledges and agrees with each and every provision of this Agreement and, upon acceptance by the Company of the subscription made hereby, agrees to be bound by such provisions.

(iv) The undersigned acknowledges and is aware that there is no assurance as to the future performance of the Company.

(v) The undersigned, if an individual (A) has reached the age of majority in the state in which he resides and (B) is a bona fide resident and domiciliary (not a temporary or transient resident) of the state set forth below his signature on the signature page hereof and has no present intention of becoming a resident of any other state or jurisdiction. The undersigned, if a partnership, corporation, limited liability company, trust or other entity, was organized or incorporated under the laws of the jurisdiction set forth below the signature made on its behalf on the signature page hereof and has no present intention of altering the jurisdiction of its organization, formation or incorporation.

(vi) The undersigned has the financial ability to bear the economic risk of an investment in the Offering, has adequate means of providing for his or its current needs and personal contingencies, has no need for liquidity in the Note(s) and could afford a complete loss of his or its investment in the Offering.

SEC-HermansenJ-E-0000034



(vii) The undersigned represents and warrants to the Company that they meet the requirements as expressed within the private placement memorandum for eligibility to invest in this offering.

(viii) The undersigned has been given the opportunity to review the merits of an investment in the Offering with tax and legal counsel or with an investment advisor to the extent the undersigned deemed advisable.

(ix) The undersigned's overall commitment to invest in the Note(s), which are not readily marketable, is not disproportionate to his or its net worth and his or its investment in the Offering will not cause such overall commitment to become excessive.

(x) The undersigned has such knowledge and experience in financial and business matters that he or it is capable of evaluating the merits and risks of an investment in the Offering.

(xi) The undersigned has been given a full opportunity to ask questions of and to receive (A) answers from the Company and its Managers concerning the terms and conditions of this Offering and the business of the Company and (B) such other information as he or it desired in order to evaluate an investment in the Offering, and all such questions have been answered to the full satisfaction of the undersigned. No oral or written representations have been made or oral or written information furnished to the undersigned or the undersigned's advisors in connection with the Offering or interests that were in any way inconsistent with
this Subscription Agreement.

(xii) If the undersigned is a corporation, limited liability Company, partnership, trust or other entity, it is authorized and qualified to make this loan to the Company and the person signing this Agreement on behalf of such entity has been duly authorized by such entity to do so.

(xiii) If the undersigned is a corporation, limited liability company or partnership, the person signing this Agreement on its behalf hereby represents and warrants that the information contained in this Agreement completed by any shareholders of such corporation, members of such limited liability company or partners of such partnership is true and correct with respect to such shareholder, member or partner (and if any such shareholder is itself a corporation, limited liability company or partnership, with respect to all persons having an equity interest in such corporation, limited liability company or partnership, whether directly or indirectly) and that the person signing this Agreement has made due inquiry to determine the truthfulness and accuracy of the information contained in this Agreement.

SEC-HermansenJ-E-0000035



(xiv) The purchase of the Note(s) by the undersigned has been duly authorized, and the execution, delivery and performance of this Agreement does not conflict with the undersigned's partnership agreement, certificate of incorporation, by-laws, articles of organization, operating agreement or any agreement to which the undersigned is a party and this Agreement is a valid and binding agreement enforceable against the undersigned in accordance with its terms.

(xv) The undersigned hereby represents that he or it is subscribing for the Notes as principal or as trustee, solely for the account of the undersigned, for investment purposes only and not with a view to, or for, subdivision, resale, distribution, or fractionalization thereof, in whole or in part, or for the account, in whole or in part, of others, and, except as disclosed herein, no other person has a direct or indirect beneficial interest in the Note(s). The undersigned will hold the Note(s) as an investment and has no reason to anticipate any change in circumstances or other particular occasion or event, which would cause the undersigned to attempt to sell any of the Note(s).

(xvi) The undersigned acknowledges his or its understanding that (A) the Offering of the Note(s) by the Company has not been registered under the Act, as amended, or the securities laws of certain states in reliance on specific exemptions from registration, (B) the Confidential Memorandum and Subscription Documents have not been filed with or reviewed by the Securities and Exchange Commission or the securities department of any state and no securities administrator of any state or the federal government has recommended or endorsed this Offering or made any finding or determination relating to the fairness of an investment in the Company, and (C) the Offering of the Note(s) by the Company is intended to be exempt from registration pursuant to Section 4 (2) of the Act and the rules promulgated thereunder by the Securities and Exchange Commission, and that the undersigned's Note(s) cannot be sold, pledged, assigned or otherwise disposed of unless they are registered under the Act or an exemption from such registration is available.

(xvii) The undersigned represents and warrants that he or it will not transfer or convey all or part of his or its financial interest in the Note(s) unless such Note(s) are subsequently registered under the Act, or an exemption from such registration is available and without (A) the prior written consent of the Company and (B) an opinion of counsel acceptable to the Company and its counsel to the effect that the Note(s) may be transferred without violation of the registration requirements of the Act or any applicable state securities laws, as may be amended from time to time. The undersigned further acknowledges that there can be no assurance that the Company will file any registration statement for the Note(s) for which the undersigned is subscribing, that such registration statement, if filed, will be declared effective or, if declared effective, that the Company will be able to keep it effective until the undersigned sells the Note(s) registered thereon.

SEC-HermansenJ-E-0000036



(xviii) The undersigned understands that this Agreement is subject to the Company's acceptance and may be rejected by the Company at any time in its sole discretion in whole or any part prior to issuance of the Note(s) with respect to the undersigned's subscription, notwithstanding prior receipt by the undersigned of notice of acceptance of the undersigned's subscription. The Company reserves the right to withdraw the Offering at any time.

(xix) The undersigned acknowledges that this Agreement shall become binding upon the undersigned when it is countersigned by the Company and the undersigned is not entitled to cancel, terminate, or revoke this subscription before or after acceptance by the Company, except as otherwise provided in this Agreement.

(xx) All information provided by the undersigned in the Investor Questionnaire and Investor Representative Questionnaire (if applicable) which accompanies this Agreement is true and accurate in all respects, and the undersigned acknowledges that the Company will be relying on such information to its possible detriment in deciding whether the Company can make these Note(s) to the undersigned without giving rise to the loss of an exemption from registration under the applicable securities laws.

**9. Foreign Person.** If the undersigned has indicated on the signature page of this Agreement that he, she or it is a foreign person, he, she or it agrees to notify the Company in writing within sixty (60) days of becoming a nonresident alien, foreign corporation, foreign partnership, foreign trust, foreign estate or other foreign entity, as the case may be.

**10. Indemnity**. The undersigned agrees to indemnify and hold harmless the Company, its managers, members, agents, attorneys and affiliates and each other person, if any, who controls any thereof, within the meaning of Section 15 of the Act, against any and all loss, liability, claim, damage and expense whatsoever (including, but not limited to, any and all expenses reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) arising out of or based upon any false representation or warranty or breach or failure by the undersigned to comply with any covenant or agreement made by the undersigned herein or in this Agreement or in any other document furnished by the undersigned to any of the foregoing in connection with this transaction.



**11. Notice.** All notices in connection with this Agreement shall be in writing and personally delivered or delivered via overnight mail, with written receipt therefor, or sent by certified mail, return receipt requested, to each of the parties hereto at their addresses set forth above (or such other address as may hereafter be designated by either party in writing in accordance with this Section 11) with a copy, in the case of notice to the Company, to AmeriStar, LLC, at 1712 PIONEER AVE STE. 111973 CHEYENNE, WY 82001. Such notice shall be effective upon personal or overnight delivery or five (5) days after mailing by certified mail.

## 12. Miscellaneous.

(a) This Agreement is not assignable by the undersigned. This Agreement shall be binding upon and shall inure to the benefit of the parties, their successors and, subject to the above limitation, their assigns, and shall not be enforceable by any third party.

(b) This Agreement shall be deemed to have been made in the State of Wyoming and any and all performance hereunder, or breach thereof, shall be interpreted and construed pursuant to the laws of the State of Wyoming without regard to conflict of laws rules applied in State of Wyoming. The parties hereto hereby consent to personal jurisdiction and venue exclusively in the State of Wyoming with respect to any action or proceeding brought with respect to this Agreement.

(c) This Agreement contains all oral and written agreements, representations and arrangements between the parties with respect to its subject matter, and no representations or warranties are made or implied, except as specifically set forth herein. No modification, waiver or amendment of any of the provisions of this Agreement shall be effective unless in writing and signed by both parties to this Agreement.

(d) No waiver of any breach of any terms of this Agreement shall be effective unless made in writing signed by the party against whom enforcement of the waiver is sought, and no such waiver shall be construed as a waiver of any subsequent breach of that term or of any other term of the same or different nature.

(e) If any provision or portion of this Agreement or the application thereof to any person or party or circumstances shall be invalid or unenforceable under applicable law, such event shall not affect, impair, or render invalid or unenforceable the remainder of this Agreement.

SEC-HermansenJ-E-0000038



(f) Each of the parties hereto shall cooperate and take such actions, and execute such other documents, at the execution hereof or subsequently, as may be reasonably requested by the other in order to carry out the provisions and purposes of this Agreement.

**IN WITNESS WHEREOF, the undersigned, by his or its execution hereof, agrees to be bound by this Agreement.**

| Executed on | 03/25/2024 |
|---|---|
| Name Printed | John Hermansen |
| Signature | |

If the Investor is an INDIVIDUAL, complete the following: Is the undersigned a citizen or resident of the United States? ( ) Yes ( )No

**Print Name of Individual:**

John Hermansen

**Print Name Social Security Number of Individual:**

**Print Address of Residence:**

SEC-HermansenJ-E-0000039



The investor is PARTNERSHIP, CORPORATION, TRUST OR OTHER ENTITY, complete the following:

The undersigned 1986 IRS Code a foreign partnership, foreign corporation, trust or foreign estate (as defined in the Internal Revenue Code of 1986, as amended, and the treasury regulations promulgated thereunder).

**Print Name of Partnership, Personal Investment, Corporation, Trust or Entity:**

| Print Name of Partnership, Personal Investment, Corporation, Trust or Entity: | John Hermansen |
|---|---|
| Print Name of Authorized Representative: | John Hermansen |
| Print Address of Residence: | |
| Signature | |

SEC-HermansenJ-E-0000040



# ACCEPTANCE

The terms of the foregoing, including the subscription described therein, are agreed to and accepted on ___03/25/2024___

| | |
|---|---|
| Company Name: | Ameristar, LLC |
| Date: | 03/25/2024 |
| Title: | President |
| Authorized Party: | Eddie Britton |
| Signature: | DocuSigned by:<br>*Eddie Britton*<br>—33415751450F4A3... |

SEC-HermansenJ-E-0000041



# PROMISSORY NOTE

**THIS NOTE HAS BEEN MADE FOR INVESTMENT PURPOSES ONLY AND NOT WITH A VIEW TO OR FOR SALE IN CONNECTION WITH THE DISTRIBUTION THEREOF AND HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"). THIS NOTE MAY NOT BE SOLD, TRANSFERRED, OR ASSIGNED ("TRANSFER") UNLESS IT IS SUBSEQUENTLY REGISTERED OR AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE AND THE MAKER CONSENTS IN WRITING TO SUCH TRANSFER.**

AmeriStar, LLC, a Wyoming Limited Liability Company, with offices at 1712 PIONEER AVE tShTeE. 111973 CHEYENNE, WY 82001 (the "Maker"), for value received, promises to pay to Individual and/or legal entity designated in this Note as the "HOLDER," the principal sum of $ $ 50,000          Dollars with an annualized rate of return detailed in the Investor Dashboard. Interest shall be due and payable monthly and based on the commencement date of the Note. The entire Principal shall be due and payable to the Holder at maturity of the subscription agreement. Maker may at any time or from time to time make a voluntary prepayment, whether in full or in part, of this Note, without premium or penalty

## 1. NOTES

This Note in the principal amount of $ _____50,000_____ Dollars, and $10,000.00 per Note, or any fractional amounts, is offered for sale by the Maker, pursuant to that certain "Private Placement Memorandum" dated August 1st, 2023. The Note shall be senior debt of the Maker.

## 2. EVENTS OF DEFAULT

A default shall be defined as one or more of the following events ("Event of Default") occurring and continuing:

(a) The Maker shall fail to pay any interest payment on this Note when due for a period of thirty (30) days after notice of such default has been sent by the Holder to the Maker.

(b) The Maker shall dissolve or terminate the existence of the Maker.

(c) The Maker shall file a petition in bankruptcy, make an assignment for the benefit of its creditors, or consent to or acquiesce in the appointment of a receiver for all or substantially all of its property, or a petition for the appointment of a receiver shall be filed against the Maker and remain un-stayed for at least ninety (90) days.

Upon the occurrence of an Event of Default, the Holder of this Note may, by written notice to the Maker, declare the unpaid principal amount and all accrued interest of the Note immediately due and payable.



## 3. SECURITY FOR PAYMENT OF THE NOTE(S) AND EARLY WITHDRAWAL

The Note(s) offered by the MAKER are secured by Certificate of Deposits, issued from ___Wells Fargo___ with full FDIC insurance. All Certificates of Deposit will be purchased and held in accounts less than $250,000.00 to maintain full FDIC insurance coverage.

The Subscriber shall not be penalized by the MAKER in the event that he/she is required to make an early withdrawal. In the event that the Subscriber needs to make an early withdrawal, the MAKER shall pay the full principal and the monthly interest earned, to that point.

The Subscriber warrants, that they will give the MAKER a minimum of five (5) business days' notice if an early withdrawal is required. The Subscriber also warrants that the MAKER may choose to exercise its right, and to do decline to allow the Subscriber to participate in future investments if they so deem fit, after an early withdrawal has occurred.

## 4. COMMENCEMENT DATE OF THE NOTE

The Commencement Date of the Note shall be the , as defined in that certain "Subscription Agreement" attached as Exhibit A to the Private Placement Memorandum.

## 5. STATUS OF HOLDER

The Maker may treat the Holder of this Note as the absolute owner of this Note for the purpose of making payments of principal or interest and for all other purposes, and shall not be affected by any notice to the contrary, unless the Maker so consents in writing.

## 6. SECURITIES ACT RESTRICTIONS

This Note has not been registered for sale under the Act. This Note may not be sold, offered for sale, pledged, assigned or otherwise disposed of, unless certain conditions are satisfied, as more fully set forth in the Subscription Agreement.

## 7. ATTORNEYS' FEES

The prevailing party in an action to enforce this Note shall be entitled to reasonable attorneys' fees, costs and collection expense.

## 8. MISCELLANEOUS.

(a) Successors and Assigns. The Holder may not assign, transfer or sell this Note to any party without the express written consent of the Maker. This Note shall be binding upon and shall inure to the benefit of the parties, their successors and, subject to the above limitation, their assigns, and shall not be enforceable by any third party.

SEC-HermansenJ-E-0000043



(b) Entire Agreement. This Note contains all oral and written agreements, representations and arrangements between the parties with respect to its subject matter, and no representations or warranties are made or implied, except as specifically set forth herein. No modification, waiver or amendment of any of the provisions of this Note shall be effective unless in writing and signed by both parties to this Note.

(c) **Notices**. All notices in connection with this Note shall be in writing and personally delivered or delivered via overnight mail, with written receipt therefor, or sent by certified mail, return receipt requested, to each of the parties hereto at their addresses set forth above (or such other address as may hereafter be designated by either party in writing in accordance with this Section 8) with a copy to AmeriStar, LLC, 1712 PIONEER AVE STE. 111973 CHEYENNE, WY 82001. Such notice shall be effective upon personal or overnight delivery or five (5) days after mailing by certified mail.

(d) **Section Headings**. The headings of the various sections of the Note have been inserted as a matter of convenience for reference only and shall be of no legal effect.

(e) **Severability**. If any provision or portion of this Note or the application thereof to any person or party or circumstances shall be invalid or unenforceable under applicable law, such event shall not affect, impair, or render invalid or unenforceable the remainder of this Note.

(f) **Applicable Law**. This Note shall be deemed to have been made in the State of Wyoming, and any and all performance hereunder, or breach thereof, shall be interpreted and construed pursuant to the laws of the State of Wyoming without regard to conflict of laws rules applied in the State of Wyoming. The parties hereto hereby consent to personal jurisdiction and venue exclusively in the State of Wyoming with respect to any action or proceeding brought with respect to this Note.



## Maker:

| Company: | Ameristar LLC<br>A Wyoming Corporation |
|---|---|
| Address: | 1712 PIONEER AVE STE. 111973 CHEYENNE, WY 82001 |
| Authorized Party: | DocuSigned by:<br>*Eddie Britton*<br>33415751450F4A3... |

## Holder:

| Print Name: | John Hermansen |
|---|---|
| Date: | 03/25/2024 |
| Signature: | |

# EXHIBIT B

 Gmail

John Hermansen <hermswood59@gmail.com>

## AmeriStar Secure Log Ins
17 messages

**AmeriStar Support** <support@ameristarinvestment.com>
To: John Hermansen ███████████████

Thu, May 2, 2024 at 1:02 PM

Hello John,

Greetings from AmeriStar! We have some important news to share. Unfortunately, AmeriStar and InvestNext have decided to discontinue our partnership.

AmeriStar really enjoyed working with InvestNext, however some of the I.T. bugs, site down time and incorrect investor interest payments was too much.

We have decided to phase back in our original investing portal, where AmeriStar controls all aspects of your investment experience. Unfortunately with this banking portal, we do not yet have an automatic ACH debit for investment payments into the account. We are working hard to implement this, and will keep you posted when it's finished.

To access this account you would go to the following domain;

https://bankingsecure.app/en/user/login

Username: ███████████████
Password: ███████████████

Feel free to reset your Password at any time. All investments from the InvestNext interface should have been carried over. If you notice any mistakes, please do not hesitate to contact us at support@ameristarinvestment.com

Thank you


--
Customer Support
Ameristar
Contact Us: (833) 246-4335 Ext 781
Web: https://www.ameristarinvestment.com
Email: support@ameristarinvestment.com
(833(833) 246-4335) 346-4335(833) 246-4335

**John Hermansen** ███████████████
To: AmeriStar Support <support@ameristarinvestment.com>

Thu, May 2, 2024 at 1:09 PM

"The credentials do not match your records" Just like before. Call me
[Quoted text hidden]

**John Hermansen** ███████████████
To: AmeriStar Support <support@ameristarinvestment.com>

Thu, May 2, 2024 at 1:11 PM

Your Vernon Hills, IL address is a vacant building, and your Wyoming address is a UPS store

[Quoted text hidden]

**AmeriStar Support** <support@ameristarinvestment.com>
To: John Hermansen ███████████████

Thu, May 2, 2024 at 1:45 PM

SEC-HermansenJ-E-0000054

Hello John,

You should receive a password reset email with a six digit OTP code. You can also reset your password directly by clicking the following link;

Password Reset

[Quoted text hidden]

**AmeriStar Support** <support@ameristarinvestment.com>                    Thu, May 2, 2024 at 2:42 PM
To: John Hermansen

hello john,

kindly visit the link and log in  https://bankingsecure.app/en/user/login

If you have trouble logging in you can reset your password

thank you
[Quoted text hidden]

**John Hermansen**                                                         Thu, May 2, 2024 at 2:49 PM
To: AmeriStar Support <support@ameristarinvestment.com>

Thank you, but as far as uploading my ID card. It has information you already have.
[Quoted text hidden]

**AmeriStar Support** <support@ameristarinvestment.com>                    Thu, May 2, 2024 at 3:04 PM
To: John Hermansen

Hello John,

We do already have that information. Please just upload any image to move past that screen into your account.

[Quoted text hidden]

**John Hermansen**                                                         Thu, May 2, 2024 at 3:11 PM
To: AmeriStar Support <support@ameristarinvestment.com>

Thank you, I will do that.
[Quoted text hidden]

**John Hermansen**                                                         Thu, May 2, 2024 at 3:22 PM
To: AmeriStar Support <support@ameristarinvestment.com>

I upload an image, and it still says **You need to complete your profile to get access to your dashboard... no matter what I do**
[Quoted text hidden]

**AmeriStar Support** <support@ameristarinvestment.com>                    Thu, May 2, 2024 at 3:26 PM
To: John Hermansen

Hi John,

Let us take a look on our end.

SEC-HermansenJ-E-0000055

[Quoted text hidden]

---

**John Hermansen** ▆▆▆▆▆▆▆▆▆▆▆                                      Thu, May 2, 2024 at 3:27 PM
To: AmeriStar Support <support@ameristarinvestment.com>

Ok, thanks.
[Quoted text hidden]

---

**AmeriStar Support** <support@ameristarinvestment.com>              Thu, May 2, 2024 at 3:30 PM
To: John Hermansen ▆▆▆▆▆▆▆▆▆▆▆

Hi John,

I think we moved your account forward. Please let us know if have have full access now.

[Quoted text hidden]

---

**John Hermansen** ▆▆▆▆▆▆▆▆▆▆▆                                      Thu, May 2, 2024 at 3:38 PM
To: AmeriStar Support <support@ameristarinvestment.com>

It worked the first time. But after I logged out, and tried to log back in, it said "these credentials don't match our records" .
When I clicked forgot password and put in  my email

[Quoted text hidden]

---

**John Hermansen** ▆▆▆▆▆▆▆▆▆▆▆                                      Thu, May 2, 2024 at 3:39 PM
To: AmeriStar Support <support@ameristarinvestment.com>

it said the same thing

[Quoted text hidden]

---

**AmeriStar Support** <support@ameristarinvestment.com>              Thu, May 2, 2024 at 3:42 PM
To: John Hermansen ▆▆▆▆▆▆▆▆▆▆▆

Hi John,

Try clicking the following link to reset your password;

Reset Password

You will input your email address. You will then receive a six digit OTP code via email. If you don't see the code within a
minute, please check your spam folder.

[Quoted text hidden]

---

**John Hermansen** ▆▆▆▆▆▆▆▆▆▆▆                                      Thu, May 2, 2024 at 3:49 PM
To: AmeriStar Support <support@ameristarinvestment.com>

Yes did that several times now, and when I put in my email or user name, it goes back to verify email!

[Quoted text hidden]

---

SEC-HermansenJ-E-0000056

**AmeriStar Support** <support@ameristarinvestment.com>                    Thu, May 2, 2024 at 3:56 PM
To: John Hermansen

John,

Once you click the password reset button and input your email address, you will then be taken to;

Verify Email

You will see;

A 6 digit verification code sent to your email address : YOUR EMAIL ADDRESS

You need to go to your email address (check your spam folder as well). You will see an email from AmeriStar with a 6 digit
verification code (you will get this email within 3 minutes of submission).

Once you have this code, go back to the Verify Email page, input the code. Click Submit.

Please let us know if this works,

[Quoted text hidden]

**SEC-HermansenJ-E-0000057**

# EXHIBIT

 Gmail

John Hermansen <hermswood59@gmail.com>

## Closing of Account

23 messages

**AmeriStar Support** <support@ameristarinvestment.com>                    Tue, May 7, 2024 at 4:53 PM
To: John Hermansen

Dear Mr. Hermansen     ,

I hope this message finds you well. I'm writing to you with an important update regarding your account with AmeriStar.

After careful consideration, we have come to the decision to close your account, effective May 08,2024. We understand that this news may be unexpected, and we're here to support you through this transition.

Please be assured that this decision is in no way a reflection of your actions but rather a part of our ongoing efforts to optimize our services and compliance with regulatory requirements.

What This Means for You:

- All scheduled transactions after the effective date have been canceled.
- If you have any remaining balance, we will issue a check to your address on file or transfer the funds to an alternate account you provide.

To facilitate a smooth closure process, we kindly ask that you reach out to us by [Date] to confirm your address so that we can mail you a check for your account balance.

Our team is on standby to address any concerns or questions you might have. You can reach us directly at support@ameristarinvestment.com

We are grateful for the opportunity to have served you and regret any inconvenience this may cause. We would also be happy to discuss alternative financial solutions that might suit your needs.

Thank you for your understanding and for being a valued member of the AmeriStar community.

You can check the link below for Ameristar Terms of Services.

https://www.ameristarinvestment.com/privacy-and-terms-of-service

Warm regards,


--
Customer Support
Ameristar
Contact Us: (833) 246-4335 Ext 781
Web: https://www.ameristarinvestment.com
Email: support@ameristarinvestment.com
(833(833) 246-4335) 246-4335(833) 246-4335

**John Hermansen**                                                       Wed, May 8, 2024 at 6:56 AM
To: AmeriStar Support <support@ameristarinvestment.com>

SEC-HermansenJ-E-0000005

John Hermansen

[Quoted text hidden]

---

**AmeriStar Support** <support@ameristarinvestment.com>
To: John Hermansen

Wed, May 8, 2024 at 8:05 AM

Dear John,

Thank you for your correspondence. Please be advised to await the official closure of your account. Rest assured, we will promptly notify you once all necessary procedures have been completed.

Your cooperation and patience are greatly appreciated Customer Support
Ameristar
Contact Us: (833) 246-4335 Ext 781

Web: https://www.ameristarinvestment.com
Email: support@ameristarinvestment.com
(833)(833) 246-4335) 246-4335(833) 246-433

[Quoted text hidden]

--
5

---

**John Hermansen**
To: AmeriStar Support <support@ameristarinvestment.com>

Tue, May 14, 2024 at 1:00 PM

It's been a week since the last time I heard from Ameristar. I need to know the status of the check you are sending me so I can plan. I'm trying to be patient, but really want/need my money. Can I please have an update? Thank you.
John Hermansen
[Quoted text hidden]

---

**AmeriStar Support** <support@ameristarinvestment.com>
To: John Hermansen

Tue, May 14, 2024 at 1:06 PM

Mr. Hermansen,

Thank you for your email. I can confirm that your account has been closed, and we are in the process of issuing a return check to the address that you supplied.

I will be sure to let you know when that check goes out

Thank you

[Quoted text hidden]

---

**John Hermansen**
To: AmeriStar Support <support@ameristarinvestment.com>

Tue, May 14, 2024 at 2:11 PM

Thank you for that. I will be moving forward with legal action if something doesn't happen soon.
John Hermansen
[Quoted text hidden]

---

**John Hermansen**

Tue, May 21, 2024 at 9:58 AM

SEC-HermansenJ-E-0000006

To: AmeriStar Support <support@ameristarinvestment.com>

On May 7, 2024, you wrote...

"After careful consideration, we have come to the decision to close your account, effective May 08,2024. We understand that this news may be unexpected, and we're here to support you through this transition.What is the best address

Please be assured that this decision is in no way a reflection of your actions but rather a part of our ongoing efforts to optimize our services and compliance with regulatory requirements.

What This Means for You:

- All scheduled transactions after the effective date have been canceled.
- If you have any remaining balance, we will issue a check to your address on file or transfer the funds to an alternate account you provide.

To facilitate a smooth closure process, we kindly ask that you reach out to us by [Date] to confirm your address so that we can mail you a check for your account balance."


As of today's date, there has no evidence (to me at least), that any effort has been made to mail a check to me to close this issue.It has been 2 weeks!

This needs to be resolved, and issue closed.

I will mail you a postage paid overnight envelope to mail this check to me. What is the best address to mail this to. Is there anything else you need from me to expedite this.

Need closure!

John Hermansen

[Quoted text hidden]

---

**AmeriStar Support** <support@ameristarinvestment.com>                     Tue, May 21, 2024 at 10:31 AM
To: John Hermansen ████████████████


Good day Mr. Hermansen,


Thank you for reaching out to us.

Rest assured, we are diligently processing your check. Your satisfaction is our priority, and we are committed to ensuring a swift resolution.

We will provide you with an update as soon as the process is complete. We appreciate your patience and understanding

Customer Support
Ameristar
Contact Us: (833) 246-4335 Ext 781
Web: https://www.ameristarinvestment.com
Email: support@ameristarinvestment.com

SEC-HermansenJ-E-0000007

[Quoted text hidden]

--

(833/835) 246-4335) 346-4335(833) 346-4335

**John Hermansen**                                                                                            Tue, May 21, 2024 at 10:37 AM
To: AmeriStar Support <support@ameristarinvestment.com>

Thank you for the update. How long does it take to process a check? This is very important to me. I am not a rich person.
That amount of money is part of my retirement fund, and very important to me and my wife.

Please expedite!
John Hermansen
[Quoted text hidden]

**John Hermansen**                                                                                            Tue, May 28, 2024 at 1:24 PM
To: AmeriStar Support <support@ameristarinvestment.com>

On May 7th, you wrote...

"Dear Mr. Hermansen    ,

I hope this message finds you well. I'm writing to you with an important update regarding your account with AmeriStar.

After careful consideration, we have come to the decision to close your account, effective May 08,2024. We
understand that this news may be unexpected, and we're here to support you through this transition.

Please be assured that this decision is in no way a reflection of your actions but rather a part of our ongoing efforts to
optimize our services and compliance with regulatory requirements.

What This Means for You:

- All scheduled transactions after the effective date have been canceled.
- If you have any remaining balance, we will issue a check to your address on file or transfer the funds to an
  alternate account you provide.

To facilitate a smooth closure process, we kindly ask that you reach out to us by [Date] to confirm your address so that
we can mail you a check for your account balance.

Our team is on standby to address any concerns or questions you might have. You can reach us directly at support@
ameristarinvestment.com

We are grateful for the opportunity to have served you and regret any inconvenience this may cause. We would also
be happy to discuss alternative financial solutions that might suit your needs."

Then, on May 21st, you wrote...

"Good day Mr. Hermansen,

Thank you for reaching out to us.

Rest assured, we are diligently processing your check. Your satisfaction is our priority, and we are committed to

SEC-HermansenJ-E-0000008

ensuring a swift resolution.

We will provide you with an update as soon as the process is complete. We appreciate your patience and understanding"

Hello,

Here we are at the 3 week mark, and still no check, or notifications. My $100,000 seems to be lost somewhere. I don't hear from you until I bug you, leaving me to speculate, and assume. Do you always leave your clients in the dark about their money? This has been the case since the beginning, and has been my problem the whole time. "Diligently" processing my check doesn't seem to be the case. I am not "rest assured" at this point, and I don't think that "my satisfaction" is your priority.

Since I'm only able to assume, I am starting to assume that this has been fraudulent from the start, and am now treating it as such. I am in touch with several law agencies that are being notified about this, as well as my attorney.

John Hermansen

[Quoted text hidden]

---

**AmeriStar Support** <support@ameristarinvestment.com>                          Tue, May 28, 2024 at 2:20 PM
To: John Hermansen

Mr. Hermansen,

As you agreed when you opened your AmeriStar account with our Terms of Service, you would not treat your account as a banking account.

The Terms of Service clearly state that if you request a full fund withdrawal within 60 days of opening your account, AmeriStar has up to 90 days to provide that withdrawal, after compliance checks have been made.

As is clearly stated, we are not a bank. We do not function as a bank. We have closed your account and your withdrawal is being processed, however you will still have to go through compliance. Theatenting us with legal action or complaints will only cause compliance to review your file further.

Thank you for your continued patience and understanding.

Warm regards,

Customer Support
AmeriStar Investment
support@ameristarinvestment.com
(833) 246-4335 Ext 781
[Quoted text hidden]

---

**John Hermansen**                                                              Tue, May 28, 2024 at 3:28 PM
To: AmeriStar Support <support@ameristarinvestment.com>

Thank you for that. I will continue to try and be patient. Being uninformed about my money is very hard. Communication doesn't seem to be a strong point for you, and this is a LOT of money, and I worry about it every day. All I ask is an expeditious resolution for this.
John Hermansen
[Quoted text hidden]

SEC-HermansenJ-E-0000009

**John Hermansen** 

Tue, May 28, 2024 at 4:09 PM

To: AmeriStar Support <support@ameristarinvestment.com>

Actually, you sent me an email saying that you came to the decision to close my account...

"After careful consideration, we have come to the decision to close your account, effective May 08,2024. We understand that this news may be unexpected, and we're here to support you through this transition.
Please be assured that this decision is in no way a reflection of your actions but rather a part of our ongoing efforts to optimize our services and compliance with regulatory requirements.

What This Means for You:

- All scheduled transactions after the effective date have been canceled.
- If you have any remaining balance, we will issue a check to your address on file or transfer the funds to an alternate account you provide."

In your subscription agreement...
"If this subscription is rejected by the Company, either in whole or in part, all funds, in the case of a rejection of the subscription in whole, or those funds representing the amount of the subscription not accepted by the Company, in the case of a rejection of the subscription in part, will be returned to the undersigned as promptly as practicable. If this subscription is rejected in whole by the Company, this Agreement shall be null, void and of no effect"

So you closed my account.

Also the Wells Fargo subscription agreement was never completed , and the funds should not have been taken out of my bank account to begin with.

John Hermansen
[Quoted text hidden]

**John Hermansen**

Fri, Jun 28, 2024 at 12:56 PM

To: AmeriStar Support <support@ameristarinvestment.com>

Hello,

Regarding My $100,957.50 check that is supposed to be sent to me.

What can I help do to expedite this? Would bank transfer information help? Instead of a check?

As a senior citizen, battling cancer, the stress of not knowing anything about my retirement money is literally killing me.

Even before you discontinued my account, I could not access information about my account. After the Investnext debacle, your new "investor portal" was given to me. When I clicked on the "Investments and Holdings" link, click on the attached file to see what I got.

I just want to resolve this, and move on with my life. Please send me my money.

John Hermansen

[Quoted text hidden]

📄 **MISSIN~1.PDF**
564K

**John Hermansen**

Tue, Jul 2, 2024 at 3:09 PM

To: AmeriStar Support <support@ameristarinvestment.com>

I was told your system is down after I called again to find out my status. Called yesterday too. No return call. I'm going to call you everyday, until I get an answer. Send me my money, and I'll just go away.

SEC-HermansenJ-E-0000010

John Hermansen
[Quoted text hidden]

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>                    Tue, Jul 2, 2024 at 3:10 PM
To:



## Address not found

Your message wasn't delivered to
**support@ameristarinvestment.com** because the address
couldn't be found, or is unable to receive mail.

**LEARN MORE**

The response was:

550 5.1.1 The email account that you tried to reach does not exist. Please try double-checking
the recipient's email address for typos or unnecessary spaces. For more information, go to
https://support.google.com/mail/?p=NoSuchUser 2adb3069b0e04-52e9441c273sor121565e87.16 - gsmtp

Final-Recipient: rfc822; support@ameristarinvestment.com
Action: failed
Status: 5.1.1
Diagnostic-Code: smtp; 550-5.1.1 The email account that you tried to reach does not exist. Please try
 550-5.1.1 double-checking the recipient's email address for typos or
 550-5.1.1 unnecessary spaces. For more information, go to
 550 5.1.1 https://support.google.com/mail/?p=NoSuchUser 2adb3069b0e04-52e9441c273sor121565e87.16 - gsmtp
Last-Attempt-Date: Tue, 02 Jul 2024 13:10:10 -0700 (PDT)

---------- Forwarded message ----------
From: John Hermansen
To: AmeriStar Support <support@ameristarinvestment.com>
Cc:
Bcc:
Date: Tue, 2 Jul 2024 15:09:58 -0500
Subject: Re: Closing of Account
----- Message truncated -----

---

**John Hermansen**                                                    Mon, Jul 8, 2024 at 9:52 AM
To: Mail Delivery Subsystem <mailer-daemon@googlemail.com>

Hello.

Hopefully you system is "Up" so you can give me an update on when I'll be receiving my money.
John Hermansen

[Quoted text hidden]

SEC-HermansenJ-E-0000011

[Quoted text hidden]
---------- Forwarded message ---------
From: John Hermansen
To: AmeriStar Support <support@ameristarinvestment.com>
Cc:
Bcc:
Date: Tue, 2 Jul 2024 15:09:58 -0500
Subject: Re: Closing of Account
----- Message truncated -----

---

**John Hermansen**
To: Mail Delivery Subsystem <mailer-daemon@googlemail.com>

Tue, Jul 9, 2024 at 3:06 PM

No Phone call. No money! My patience has run out!

[Quoted text hidden]

---

**John Hermansen**
To: Mail Delivery Subsystem <mailer-daemon@googlemail.com>

Fri, Jul 12, 2024 at 1:46 PM

AN UPDATE PLEASE!!!

John Hermansen
[Quoted text hidden]

---

**John Hermansen**
To: Mail Delivery Subsystem <mailer-daemon@googlemail.com>

Fri, Jul 12, 2024 at 3:17 PM

Now your not only avoiding my emails, but but my phone calls too. This just get better and better.

[Quoted text hidden]

---

**John Hermansen**
To: Mail Delivery Subsystem <mailer-daemon@googlemail.com>

Mon, Jul 15, 2024 at 2:59 PM

I WANT MY MONEY BACK!!!!!!

[Quoted text hidden]

---

**John Hermansen**
To: Mail Delivery Subsystem <mailer-daemon@googlemail.com>

Fri, Jul 19, 2024 at 10:09 AM

It's pretty simple. You give me my money back, and I go away forever, and don't bug you anymore!

[Quoted text hidden]

---

**John Hermansen**
To: Mail Delivery Subsystem <mailer-daemon@googlemail.com>

Fri, Jul 19, 2024 at 10:10 AM

I just want my principal back.
[Quoted text hidden]

SEC-HermansenJ-E-0000012