**FILED**

3:27 pm, 9/9/24

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

        Plaintiff,

vs.

AMERISTAR, LLC

        Defendant,

and

AMERISTAR MK Ltd. Liability
Company, FRED W. FREITAG IV, and
HIGHLINE GOLD INC. a/k/a
HIGHLINE GOLD LLC a/k/a
HIGHLINE GOLD CORPORATION
LLC,

        Relief Defendants.

Case No.  24-CV-169-KHR

---

## ORDER GRANTING PLAINTIFF'S EMERGENCY MOTION FOR A RULE 65(B)(1) TEMPORARY RESTRAINING ORDER, ASSET FREEZE, AND OTHER EMERGENCY RELIEF [5]

Before the Court is Plaintiff's Emergency Motion for a Rule 65(b)(1) Temporary

Restraining Order, Asset Freeze, and Other Emergency Relief. [ECF No. 5]. Plaintiff, the

United States Securities and Exchange Commission, brings three claims against Ameristar,

LLC ("Defendant") and one claim against Fred W. Freitag, IV, AmeriStar MK Ltd.

Liability Company a/k/a AmeriStar MK, LLC, and HighLine Gold Inc. a/k/a HighLine Gold LLC a/k/a HighLine Gold Corporation LLC ("Relief Defendants"). [ECF No. 1]. Plaintiff seeks an emergency temporary restraining order ("TRO") pursuant to Rule 65(b) of the Federal Rules of Civil Procedure to stop Defendant from operating and advertising its allegedly fraudulent investments to the public. The Court finds Plaintiff has shown there is a substantial likelihood of success on the merits, that current and future investors could potentially suffer irreparable harm if a TRO were denied, that the threatened injury to investors outweighs any potential injury to Defendants if a TRO is granted, and that granting a TRO and freezing assets furthers the public interest.

## BACKGROUND

Plaintiff makes the following allegations:[1] Beginning in August 2023, and continuing today, Defendant offers investments to the public through social media accounts, and until August 2024, it also did so through at least two websites. Defendant attracts investors with advertisements on Facebook and Instagram accounts. Defendant previously used a website ("AmeriStar Website") that was available to the public as of about August 18, 2024, which contained marketing materials, including an investor brochure ("Investor Brochure") and at least two versions of a private placement memorandum ("PPM"). Defendant also solicited investors through another website with the address of bankingsecure.app/en/ ("Banking Secure Website"). While occasionally

---

[1] Plaintiff utilizes a number of exhibits and the Declaration of Danielle R. Voorhees in support of its Motion. Mr. Voorhees is an attorney with the SEC who has conducted an extensive investigation into this matter.

inaccessible, the Banking Secure Website appeared accessible on September 3, 2024. Collectively, these materials are referred to as the "Offering Materials."

Through these channels, Defendant claimed that it offered high yield, FDIC-insured investments. The AmeriStar Website claimed that it was offering securities that combined the return from its purchase of Certificates of Deposit ("CDs") with fees from its purported "courtesy deposit" program. Defendant told investors they could essentially double the typical rate of return for a CD by investing with Defendant's "courtesy deposit" program because Defendant would both purchase the CD (which would generate interest payments), and also use that CD to generate a fee from businesses looking to borrow money from a bank. These businesses would purportedly pay Defendant this fee if Defendant would purchase CDs from a bank because, Defendant claimed, its "courtesy deposit" would cause the bank to look favorably on the business's loan application. For example, the AmeriStar Website stated: "AmeriStar combines a Certificate of Deposit and a Courtesy Deposit, to generate two returns," and in response to a "Frequently Asked Question" that the investment seems too good to be true, the website explained, "Well you are right, no FDIC bank could ever have interest of 12% in this market. But AmeriStar is not providing a CD at 12%. The investment is into a Regulation D private offering that combines a CD and a Courtesy Deposit." Defendant bolstered the "courtesy deposit" program by claiming that it would purchase CDs in a way to ensure that insurance provided by the FDIC would protect all investor funds.

Defendant offered and sold these investments in the form of notes, which are securities under federal law as explained below. These notes stated that repayment of the

principal investment is due by a certain date and that Defendant will make monthly interest payments based on a specified annualized rate of return.

Plaintiff concludes this scheme, which involves the ongoing solicitation of investors on social media, is a fraud. Defendant did not purchase the CDs for investors or make "courtesy deposits" for those investors like it said it would, and bank records do not reflect the purchase of CDs from the specific banks identified in its offering materials. Instead, investor money flowed into accounts of Relief Defendants and a large amount of investor money was sent to companies that sale precious metals.

### RELEVANT LAW

"The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order." *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) (citing 13 JAMES WM MOORE, MOORE'S FEDERAL PRACTICE ¶ 65.36 (3d ed. 2014)). TROs chiefly differ from preliminary injunctions in duration and that they may be granted without notice to the opposing party. *Id.*; Fed. R. Civ. P. 65. The initial timeframe for a TRO is limited to fourteen days from the hour it is issued. Fed. R. Civ. P. 65(b)(2). An extension may only be extended an additional fourteen days for good cause or a longer duration if the opposing party consents. *Id.* "A temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions." *Sampson v. Murray*, 415 U.S. 61, 86 (1974). Additionally, "[t]emporary restraining orders are not ordinarily appealable, but preliminary injunctions are appealable." *Tooele Cnty. v. United States*, 820 F.3d 1183, 1186 (10th Cir. 2016).

A TRO's *ex parte* nature and short duration represent that it is designed to preserve the status quo between the parties by preventing irreparable injury until a court can rule on the merits of a preliminary injunction. *Flying Cross Check, L.L.C. v. Cent. Hockey League, Inc.*, 153 F. Supp. 2d 1253, 1258 (D. Kan. 2001). "The status quo is defined as the last peaceable uncontested status existing between the parties before the dispute developed." *Miller v. Austin*, 622 F. Supp. 3d 1105, 1108 (D. Wyo. 2022) (internal quotations omitted). In contrast, preliminary injunctions "preserve the relative positions of the parties until a trial on the merits can be held." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). "In both cases, however, injunctive relief is an extraordinary remedy." *People's Tr. Fed. Credit Union*, 350 F. Supp. 3d at 1138 (quotations omitted). This extraordinary remedy is not awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Rather, courts are required to balance the competing claims of the injury while considering the effect of granting or denying the motion upon each party. *Id.* In doing so, courts utilize a four-prong test to determine if a party is entitled to a TRO or preliminary injunction. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019).

First, the moving party must show a substantial likelihood of success on the merits. *Id.* Second, the movant would suffer irreparable harm if the motion is denied. *Id.* Third, the threatened injury outweighs the opposing party's injury if the injunction is granted. *Id.* Last, it must show that granting the injunction is not contrary to public interest. *Id.* Public consequences of granting the extraordinary relief are particularly important for the court's consideration. *Winter*, 555 U.S. at 22. The consideration of these elements rests within a

district court's discretion and is only overturned for an abuse of that discretion. *Free the Nipple-Fort Collins*, 916 F.3d at 796. "A district court's decision crosses the abuse-of-discretion line if it rests on an erroneous legal conclusion or lacks a rational basis in the record." *Id.* Factual findings are reviewed for clear error, and legal conclusions are reviewed de novo. *Id.* at 796–97.

After the U.S. Supreme Court's decision in *Winter*, there is no longer a modified burden for the first prong if the other three elements tip strongly in the movant's favor. 555 U.S. at 22; *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016). Additionally, the Tenth Circuit has recognized "three types of specifically disfavored preliminary injunctions." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004), *aff'd sub. nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006); *Free the Nipple-Fort Collins*, 916 F.3d at 797. Those types are "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Id.* Preliminary injunctions that fall into one of these categories are subject to a heightened burden. *Id.* That heightened burden requires "a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 976; *Free the Nipple-Fort Collins*, 916 F.3d at 797.

**RULING OF THE COURT**

Some courts within the Tenth Circuit have previously found that seeking preliminary injunctive relief in SEC enforcement actions does not require a showing of irreparable injury.  But there must at least be a showing that defendant's actions violated statutory obligations.  *U.S. Sec. & Exch. Comm'n v. Cell>Point, LLC*, No. 21-CV-01574-PAB-KLM, 2022 WL 444397, at *5 (D. Colo. Feb. 14, 2022), *reconsideration denied*, No. 21-CV-01574-PAB-SBP, 2024 WL 1141527 (D. Colo. Mar. 15, 2024).  This Court will follow the traditional four factor preliminary injunction standard in addressing the current case.  *Sec. & Exch. Comm'n v. Chappell*, 107 F.4th 114, 126 (3d Cir. 2024) ("District courts in this Circuit must apply the normal four-factor preliminary injunction test when considering the SEC's application for a preliminary injunction."); *Sec. & Exch. Comm'n v. Digital Licensing Inc.*, No. 23-CV-482, 2023 WL 8283613, at *7 (D. Utah Nov. 30, 2023) (applying the traditional four-factor preliminary injunction factors in an SEC enforcement action).  And because TROs and preliminary injunctions are analyzed under the same structure, the Court will conduct the current TRO analysis under the traditional four-factor test.

**I. Substantial Likelihood of Success on the Merits**

The first prong of a preliminary injunction analysis requires a movant to prove a substantial likelihood of success on the merits of the case.  *Free the Nipple-Fort Collins*, 916 F.3d at 797.  Plaintiff's Complaint alleges two types of claims under the antifraud provisions of the Securities Act and the Exchange Act against Defendant.  First, Plaintiff alleges Defendant made false and misleading statements and omissions that violated

7

Exchange Act Section 10(b) and Rule 10b–5(b) thereunder and Section 17(a)(2) of the Securities Act. Second, Plaintiff alleges Defendant's fraudulent conduct violated Exchange Act Section 10(b) and Rule 10b-5(a) and (c) and Securities Act Section 17(a)(1) and (3). Plaintiff assert a claim for equitable disgorgement against the Relief Defendants.  The likelihood of success on each claim will be addressed in turn.

### a.   Violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act and Section 17(a)(2) of the Securities Act

Under Section 10(b) of the Securities Exchange Act, it is unlawful for anyone to purchase or sale a security in contravention to any SEC rules and regulations.  *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 260 (2024).  "Rule 10b–5 implements this prohibition and makes it unlawful for issuers of registered securities to 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Id*. (quoting 17 C.F.R. § 240.10b–5(b) (2022)). To establish a violation under Section 10(b) or under 10b–5 Plaintiff must establish that Defendant made: 1) a material misrepresentation; 2) of a material fact; 3) with the necessary scienter; 4) in connection with the purchase of sale of a security; and 5) by utilizing means of interstate commerce.  *S.E.C. v. Smart*, 678 F.3d 850, 856–57 (10th Cir. 2012) (internal citations and quotations omitted).  The elements for a claim under Section 17(a)(2) of the Securities Act are virtually the same, the only difference being the element of scienter.  For a claim under § 17(a)(2) the movant must only show that the actor was negligent.  Because the elements are virtually the same, the Court will address the likelihood of success on both

claims under Section 10(b) and Rule 10b-5 of the Securities Exchange Act and Section 17(a)(2) of the Securities Act together.

*Material Misrepresentation of Material Fact*

The first two elements of a material misrepresentation of a material fact are tied together.  Plaintiff has sufficiently alleged Defendant made such false and misleading statements of material fact.  Plaintiff has provided a great amount of detail outlining Defendant's allegedly false and misleading statements, such as Defendant claiming to utilize investor funds to purchase FDIC-insured CDs with each account being fully insured.  Plaintiff has provided sufficient evidence to support the allegations that these statements are false.  Plaintiff has further provided evidence by obtaining bank records that were void of any indication that funds were used to purchase CDs, and that the funds were instead used to purchase precious metals.  Plaintiff has also shown a strong likelihood that these allegedly false and misleading statements were material in that a reasonable investor would consider such claims important when deciding whether to invest in the security.  Plaintiff also has shown a likelihood that Defendant's use of the allegedly false and misleading material statements helped to obtain money or property.  That is, Plaintiff has shown Defendants have amassed over three million dollars from investors.

*Scienter*

The Tenth Circuit has found scienter to be a showing that a party acted with the intent to deceive, manipulate, defraud, or was reckless.  *Naomi L. Miles Revocable Tr. v. Lawrence*, No. 10-CV-034-S, 2014 WL 11498025, at \*4 (D. Wyo. Apr. 2, 2014) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)); *City of Philadelphia v.*

*Fleming Companies, Inc.*, 264 F.3d 1246, 1259 (10th Cir. 2001)).  "Recklessness is defined as 'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Id.* (quoting *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1232 (10th Cir. 1996)).

Plaintiff has shown a strong likelihood of success on the claim that Defendant acted with the requisite scienter.[2]  Namely, Plaintiff has offered evidence to support the allegation that Defendant knew or was reckless for not knowing that the above-mentioned material statements were untrue and made with the specific purpose of inducing people to act.  This reckless intent is further shown by Defendant's alleged continued use of false and misleading statements about the investments being insured by the FDIC even after receiving notice that the statements were false.  Plaintiff has alleged and offered support that Defendant told investors their money would be used to secure CDs, but instead the money was used to purchase precious metals that are difficult to trace.

<u>Connection with the Purchase/Sale of a Security</u>

The Securities Act broadly defines security in general terms such as any note, and a note is presumed to be a security.  And that presumption may only be rebutted upon a showing that the note is in essence a judicial created non-security instrument.  *S.E.C. v. Thompson*, 732 F.3d 1151, 1159–60 (10th Cir. 2013) (internal citations and quotations omitted). Such categories include notes on consumer financing, mortgage notes, and short-

---

[2] The Court need not address negligence under Section 17(a)(2) of the Securities Act because "negligence or gross negligence. . . . is below the threshold for liability under Section 10(b) of the Exchange Act."  *Dronsejko v. Thornton*, 632 F.3d 658, 668 (10th Cir. 2011).

term notes.  *Id.*  In determining whether a note is a security the Supreme Court established the *Reves's* family resemblance test wherein the Court must consider: the motivations that would prompt a seller or buyer to enter into the transaction; the plan of distribution for the instrument; the reasonable expectations of the investing public; and the existence of another regulatory scheme that reduces the risk.  *Id.*  (citing *Reves v. Ernst & Young*, 494 U.S. at 64–65 (1990)).

Plaintiff has shown a strong likelihood that the investment is a security as defined under the Act.  First, the notes at issue do not remotely resemble the recognized categories of notes that are not considered securities.  Next, the notes were offered to raise funds for a "courtesy deposit" program, and investors invested to generate a higher rate of return with all the protections of FDIC insurance.  The notes were also sold and marketed to a broad segment of the public and were marketed via the internet and social media.  Last, there is no other regulatory scheme to protect investors, this is especially true given the Defendant's allegedly false claim that the investments were FDIC-insured.

<u>Utilizing Interstate Commerce</u>

There cannot be any real dispute Defendant utilized interstate commerce in conducting its business operations.  Defendant used the internet to disseminate the allegedly false and misleading statements on its websites and social media accounts and investors wired money across state lines to purchase those securities. This use of the internet and wire transfers satisfies the interstate commerce element.  *See, e.g., SEC v. One or More Unknown Traders in Common Stock of Certain Issuers*, No. 08-CV-1402 (KAM)(JMA), 2009 WL 3233110, at *4 (E.D.N.Y. Oct. 2, 2009) (holding that wire

transfers, internet usage, among other things, established interstate commerce); *SEC v. Milan Cap. Grp., Inc.*, No. 00-Civ.-108 (DLC), 2000 WL 1682761, at *5 n.3 (S.D.N.Y. Nov. 9, 2000) (stating interstate wire transfers satisfy the interstate commerce requirement).

For the foregoing reasons, the Court finds Plaintiff has shown a high likelihood of success on the merits of the claims.

### b. Violation of Exchange Act Section 10(b) and Rules 10b-5(a) and (c) thereunder and Sections 17(a)(1) and (3) of the Securities Act

Plaintiff has also shown a substantial likelihood it will succeed on its allegations that Defendant engaged in deceptive conduct in violation of Exchange Act Section 10(b) and Rules 10b-5(a) and (c) thereunder and Sections 17(a)(1) and (3) of the Securities Act. The pertinent statutes make it unlawful to commit fraud in the connection with the purchase or sale of a security. "Courts have interpreted these provisions to create what is known as 'scheme liability.'" *Sec. & Exch. Comm'n v. McDuffie*, No. 12-CV-02939, 2014 WL 4548723, at *10 (D. Colo. Sept. 15, 2014). "To prove scheme liability, the SEC must prove that defendants directly or indirectly: (1) committed a deceptive or manipulative act; (2) in furtherance of the alleged scheme to defraud; (3) with scienter." *Id*.

These elements are similar to those already discussed above, and the factual allegations that support the showing of a substantial likelihood of success on the merits of alleged violations of Section 10(b) and Rule 10b-5 of the Securities Exchange Act and Section 17(a)(2) of the Securities Act, can also support a finding that there is a substantial likelihood of success on the merits of a allegation of a violation under Exchange Act

Section 10(b) and Rules 10b-5(a) and (c) thereunder and Sections 17(a)(1) and (3) of the Securities Act. *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 80 (2019) (The "Court and the Commission have long recognized considerable overlap among the subsections of the Rule and related provisions of the securities laws.").

The Court need not rehash the factual findings addressed above, other than to state Plaintiff has sufficiently shown there is a substantial information and evidence to support the allegations that Defendant made multiple false or misleading and deceptive statements. And that Defendant obtained funds utilizing those statements and misused those funds to purchase precious metals instead of CDs.

### c. Equitable Disgorgement

Plaintiff's fourth claim is for equitable disgorgement against the Relief Defendants. Disgorgement is a form of equitable relief to prevent a party from circumventing a court's ability to recapture fraudulently obtained proceeds by giving the money to a third party. *Sec. & Exch. Comm'n v. Erwin*, 553 F. Supp. 3d 895, 902 (D. Colo. 2021) (internal citations and quotations omitted). "To establish a claim for disgorgement against a relief defendant, the Commission must show that the relief defendant: 1) received ill-gotten funds; and 2) does not have a legitimate claim to those funds." *Id*.

Plaintiff has provided sufficient evidence and factual support to show a strong likelihood of success on its allegation that the Relief Defendants received ill-gotten funds and that they have no legitimate claim to those funds. In short, Plaintiff offers sufficient support for its allegations that the Relief Defendants received funds from Defendant's actions, and that Relief Defendants did not provide any goods or services to obtain those

funds.  Plaintiff has supported these allegations by offering declarations, bank records, marketing materials, witness testimony, among other evidence.

## II. Irreparable Injury and Asset Freeze

Irreparable harm is a high standard and is the most important factor to consider in addressing a TRO or preliminary injunction. *N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1249 (10th Cir. 2017).  A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). The "injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

Plaintiff has provided sufficient information and evidence to support its allegation that any current or new investors are likely to suffer irreparable harm in the absence of a TRO prohibiting Defendant from soliciting, accepting, or depositing additional funds from investors, and an order requiring any associated websites and social media accounts be removed. Plaintiff has shown it is possible that without a TRO, prospective investors could be enticed to invest in an allegedly fraudulent scheme and lose their investments without an adequate remedy because Defendant and Relief Defendants may obscure and dissipate their funds.

Further, Plaintiff has shown current investors who have already given money to Defendant could potentially suffer irreparable harm in the absence of a TRO and asset

freeze.  In general, economic harm is not considered irreparable.  However, the general

rule is not applicable where there is no adequate remedy to recover the economic damages.

*Cloud Peak Energy Inc. v. U.S. Dep't of Interior*, 415 F. Supp. 3d 1034, 1042–43 (D. Wyo.

2019) (internal citations and quotations omitted).  Plaintiff provided sufficient information

and evidence to support its allegations and there is a high likelihood of success on its

allegations that any current or new investors would be unable to collect any damage

judgment obtained from Defendants.  And if a party is unable to "collect a money

judgment, then failure to enter the preliminary injunction would irreparably harm it." *Tri-*

*State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351,

355 (10th Cir. 1986).

In conjunction with the TRO, Plaintiff also requests that the Court freeze

Defendants' assets.  Courts have broad equitable power to grant forms of preliminary relief,

including freezing assets.  *See United States v. First Nat'l City Bank*, 379 U.S. 378, 384

(1965).  Plaintiff has made the necessary showing it and any investors will suffer

irreparable harm without an order freezing assets.  Plaintiff has shown there is good cause

to support the allegations that Defendant and Relief Defendants might dissipate, conceal,

or transfer from the jurisdiction of this Court assets that could be subject to an order

directing disgorgement or the payment of civil money penalties in this action. An order

temporarily freezing assets is appropriate here to ensure Defendants do not dissipate assets

prematurely and to provide any victims with the best possibility to recover losses.  *Sec. &*

*Exch. Comm'n v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972).

Accordingly, an order freezing Defendant's and Relief Defendants' assets is necessary to

preserve the status quo and to protect this Court's ability to award equitable relief in the form of disgorgement of illegal profits from fraud, as well as civil penalties if Plaintiff's allegations are ultimately proved.

## III.  The Potential Injury Outweighs any Injury to Defendants

As discussed above, there is a significant risk of irreparable harm to the current investors.  Investors have already potentially lost millions of dollars based on investments made after considering Defendant's promises and claims.  In the absence of a TRO, it is also likely that members of the public would continue to invest with Defendant.  Further, without an order freezing assets, Defendants could potentially dissipate or move any remaining investment money outside the jurisdiction of the Court, precluding the recovery of assets for potential victims.

The only conceivable harm that Defendant could suffer from the issuance of a TRO and order freezing assets would be to prevent it from obtaining any new investors and to limit its ability to move or use assets for the duration of the order.  And given the findings above, Plaintiff has shown there is a likelihood it will succeed on its allegations.

Plaintiff has shown that the potential injury to investors and the general public outweighs any potential injury to Defendants.

## IV.  Public Interest

The relief requested by Plaintiff, a TRO, directly seeks to protect investors and potential investors, and as a result is not adverse to the public interest.  Rather, the public interest is served by a TRO and asset freeze that would stop any ongoing wrongdoing and protect assets to allow potential victims the best chance to recover losses.  *Sec. & Exch.*

16

*Comm'n v. End of Rainbow Partners, LLC*, No. 17-CV-02670-MSK, 2017 WL 5404199, at *2 (D. Colo. Nov. 14, 2017) (holding discussing that an asset freeze could advance the public interest by increasing the likelihood that ill-gotten funds are secured to satisfy a potential judgment).

### CONCLUSION

Based on the analysis above, the Court finds Plaintiff has provided sufficient facts and evidence to support its allegations, and there is a substantial likelihood of success on the merits.  Plaintiff has also sufficiently alleged that current and future investors would suffer irreparable harm if the motion were denied and that the threatened injury outweighs any potential injury to Defendants if a TRO is granted.  Last, Plaintiff has sufficiently alleged and offered evidence to support a finding that granting a TRO and freezing assets furthers the public interest. Additionally, the Court finds Plaintiff's requested relief does not fit into any of the heightened categories of scrutiny. And even if a heightened standard were applicable, the Court finds Plaintiff's strong showing on the likelihood of success on the merits, balanced against any potential harms would meet such scrutiny.

The findings and conclusions set forth herein do not constitute a determination on the merits or in the context of a preliminary injunction but are preliminary findings in the context of the limited evidence presented for the requested temporary relief.  Pursuant to Rule 65(b)(3) of the Federal Rules of Civil Procedure the Court sets a hearing on Plaintiff's request for a preliminary injunction for September 20, 2024, at 3:00 p.m.

**NOW, THEREFORE, IT IS ORDERED** Plaintiff's Emergency Motion for a Rule 65(b)(1) Temporary Restraining Order, Asset Freeze, and Other Emergency Relief [ECF No. 5] is **GRANTED**.

**IT IS FURTHER ORDERED** that, **pending further action by this Court**:

## I.   ORDER RESTRAINING DEFENDANTS FROM VIOLATING SECTION 17(a) OF THE SECURITIES ACT OF 1933

AmeriStar and its officers, directors, subsidiaries, affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, including facsimile transmissions, electronic mail or overnight delivery service, and each of them, are temporarily restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)    to employ any device, scheme, or artifice to defraud;

(b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser by, directly or indirectly,

(i)    creating a false appearance or otherwise deceiving any person, or

(ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, and doing any of these things about:

(A) any investment in or offering of securities,

(B) the registration status of such offering or of such securities,

(C) the use of investor funds; or

(D) the misappropriation of investor funds or investment proceeds.

## II. ORDER RESTRAINING DEFENDANTS FROM VIOLATING SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5 THEREUNDER

AmeriStar and its officers, directors, subsidiaries, affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, including facsimile transmissions, electronic mail or overnight delivery service, and each of them, are temporarily restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to make any untrue statement of a material fact, or to omit to state a material fact necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading, or

(c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, and doing any of these things about:

(A) any investment in or offering of securities,

(B) the registration status of such offering or of such securities,

(C) the use of investor funds; or

(D) the misappropriation of investor funds or investment proceeds.

## III.   ORDER RESTRAINING AMERISTAR FROM SOLICITING, ACCEPTING, OR DEPOSITING FUNDS FROM INVESTORS

AmeriStar and its officers, directors, subsidiaries, affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, including facsimile transmissions, electronic mail or overnight delivery service, and each of them, are temporarily restrained and enjoined, directly or indirectly, including, but not limited to, through any entity owned or controlled by them, from soliciting, accepting, or depositing funds from investors.

## IV.   ORDER REQUIRING THAT WEBISTES AND SOCIAL MEDIA ACCOUNTS ASSOCIATED WITH AMERISTAR BE TAKEN DOWN

AmeriStar and its officers, directors, subsidiaries, affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them, as well as web hosting companies that host the websites listed below, social media companies that host the social media accounts listed below, and domain registrars with whom the domain names at issue are registered who receive actual notice of this order by personal service or otherwise, including facsimile transmissions, electronic mail or overnight delivery service, shall forthwith, as applicable, take down from the Internet the following websites and social media accounts and lock and suspend through the expiration of their current registration period the below domain names:

- ameristarinvestment.com
- bankingsecure.app/en/
- backedgold.com
- AmeriStar's Facebook account
- AmeriStar's Instagram account

## V.   ORDER FREEZING ASSETS

A. All assets, funds, or other property of any kind, held by, or under the direct control of AmeriStar or Relief Defendants whether held in any of their names or for their direct or indirect beneficial interests, or subject to their direct or indirect control, wherever located or by whomever held, and whether acquired before or after institution of this action, up to the amounts listed below, are frozen and will not be sold, transferred, or encumbered in any way, (with allowance for necessary and reasonable living expenses to be granted by this Court only upon good cause shown by application to the Court with notice to and an opportunity for the SEC to be heard):

AMERISTAR, LLC: **$3,773,245.46**

AMERISTAR MK Ltd. Liability Company: **$1,231,000.41**

FRED W. FREITAG IV: **$448,841.14**

HIGHLINE GOLD INC. a/k/a HIGHLINE GOLD LLC a/k/a HIGHLINE GOLD CORPORATION LLC: **$2,074,557.95**

B. AmeriStar, Relief Defendants, and their officers, directors, successor corporations, subsidiaries, affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, and each of them, shall hold and retain within their control, and otherwise prevent any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever (including the use of any credit cards or other incurring of debt) of any of their funds, property (including money, virtual currency or other digital asset, real or personal property, tangible assets, securities, commodities, choses in action, or other property of any kind whatsoever, in whatever form such assets may exist and wherever located), or other assets or things of value held by them, under their control or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located.

C. Any bank, financial, brokerage institution, corporation, licensor/licensee, or other person or entity holding any funds, securities, intellectual property, or other assets in the name of, for the benefit of, or under the control of AmeriStar,

Relief Defendants, or their officers, directors, successor corporations, subsidiaries, affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with AmeriStar and Relief Defendants, shall hold and retain within their control and prohibit the withdrawal, removal, transfer or other disposal of any such funds, or other assets.

This order specifically applies, but is not limited to, the following accounts:

| Financial Institution | Account Name | Account Number |
| --- | --- | --- |
| Citizens Bank | AmeriStar MK LTD Liability Company | Ending 0022 |
| Citizens Bank | AmeriStar MK LTD Liability Company | Ending 9873 |
| CP Commercial Delaware LLC Launch Workspaces | HighLine Gold LLC | 25 Main Street Suite 200, Westlake, OH 44145 |
| First National Bank of PA | Law Office of Fred Freitag IOLTA Fred W Freitag IV | Ending 5672 |
| First National Bank of PA | Fred W Freitag IV DBA Law Office of Fred Freitag | Ending 5664 |
| IDS Texas | HighLine Gold | Ending 4508 |
| IDS Texas | Bstar US - HighLine Gold BullionStar United States | Ending 1616 |
| KeyBank | AmeriStar MK Ltd Liability Company | Ending 0731 |
| Mars Bank | Barbara H Freitag Fred W Freitag IV | Checking - ending 4005 Savings - ending 4192 |

| Financial Institution | Account Name | Account Number |
|---|---|---|
| NOVO<br>Middlesex Federal Savings, F.A. | AmeriStar MK LLC | Ending 4165 |
| PNC Bank | Fred W Freitag IV<br>Barbara H Freitag | Ending 1614 |
| Robinhood | Fred Freitag | Ending in 2905 |
| Wise US Inc. | Fred William Freitag IV | Ending 3343 |
| Wise US Inc. | AmeriStar MK, LLC | Ending 4065 |
| Wise US Inc. | AmeriStar MK, LLC | Ending 8743 |

D. No person or entity, including AmeriStar and Relief Defendants, or any creditor or claimant against them or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this Order; provided, however, that any party or non-party may seek leave from this Order upon a proper showing.

E. Copies of this Order may be served by any means, including facsimile transmission, email, and overnight courier, upon any entity or person that may have possession, custody, or control of any assets of AmeriStar or Relief Defendants that may be subject to any provision of this Order.

## VI.   ORDER FOR ACCOUNTING

AmeriStar and each Relief Defendant shall, within **five business days** of the service of this order, file with this Court, and serve on the SEC, at the address of its counsel of record, a sworn accounting of:

A.      The current locations of all funds, crypto assets, or other assets received from any third party for the purpose of investing with AmeriStar ("Investor"); specifying the Investor from whom the funds or other assets were received or obtained; the date(s) such funds or other assets were received; the current locations of all such funds or other assets; the disposition of any such funds or other assets including the date, amount, recipient and purpose of each disbursement; and the location, title and account numbers at any financial institution to which any such funds or other assets have been transferred;

B.      All funds, investments, securities, real estate, crypto assets, and other assets with an original cost or present value of over $1000, including, but not limited to, vehicles, jewelry, art, and computers held in the name or for the benefit of AmeriStar or Relief Defendant or in the names of any family member, entity, subsidiary, affiliate, or agent under their direct or indirect control, or in which they have or have had since **June 1, 2023**, a direct or indirect beneficial interest, stating a description and location of such assets;

C.      Each account, including safe deposit boxes, with any bank, financial institution, crypto asset trading platform, or brokerage firm, maintained in the names of AmeriStar or Relief Defendants or the names of any family member, entity, affiliate, or agent, or in which they have direct or indirect control or beneficial interest, or have or have had any direct or indirect beneficial interest since **June 1, 2023**;

D.    Every transaction in which the ownership, direction, and control of any funds or other assets over $1000 or other assets of any kind with an original cost or present value of over $1000 have been transferred, directly or indirectly, since **June 1, 2023** to or from AmeriStar or Relief Defendants or their agents.

## VII.  ORDER FOR EXPEDITED DISCOVERY

The SEC's request for expedited discovery is granted and, commencing with the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 33, 34, and 35 of the Federal Rules of Civil Procedure shall proceed as follows:

A.    Until resolution of the SEC's motion for preliminary injunction, deposition notices under Rule 30 may be served by email on counsel for any party or if a party is unrepresented, deposition notices may be served on the party by facsimile, e-mail, overnight mail, courier, or process server;

B.    Under Rule 30(a) of the Federal Rules of Civil Procedure, the parties may take depositions upon oral examination on **three business days'** notice of any such deposition. Depositions may be taken telephonically or by video conferencing system. As to AmeriStar and Relief Defendants, and their officers, directors, subsidiaries and affiliates, agents, servants, employees, owners, brokers, associates, trustees, and underwriters, the SEC may depose such witnesses after serving a deposition notice by facsimile, e-mail, mail, hand or overnight courier upon such Defendant and without serving a

26

subpoena on such witness. Depositions that have not been signed by the witness may be used for purposes of the hearing on the SEC's motion for a preliminary injunction. Any witness that fails to appear for his or her duly noticed deposition is prohibited from testifying or providing a declaration at the preliminary injunction hearing.

C.  Pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, the parties shall answer interrogatories within three days of service of such interrogatories. Interrogatories shall be served by email upon the parties or their counsel;

D.  Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, the parties shall produce all documents requested within **three days** of service of such request. Documents produced to the SEC shall be produced electronically as counsel for the SEC may direct in writing. Requests for production shall be served by email upon the parties or their counsel;

E.  All written responses to the SEC's requests for discovery under the Federal Rules of Civil Procedure shall be served by email on the SEC's counsel of record; and

F.  In connection with any discovery from any non-party not referenced in paragraph A, deposition or document discovery may be had within **five days** of service of a subpoena pursuant to Rule 45. Service of a subpoena shall be made by facsimile or email.

## VIII. ORDER PROHIBITING ALTERATION OR DESTRUCTION OF EVIDENCE

AmeriStar, Relief Defendants, and their officers, directors, successor corporations, subsidiaries, affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, and each of them, are hereby enjoined and restrained from destroying, mutilating, concealing, altering, disposing of, or otherwise interfering with the access of the SEC to any and all books, records, documents, data, correspondence, brochures, manuals, papers, ledgers, accounts, statements, obligations, files and other property that are in the possession, custody or control of AmeriStar, Relief Defendants, or any of their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, that refer, reflect, or relate to the allegations in the Complaint, or that refer, reflect, or relate AmeriStar's and Relief Defendants' assets, finances, or business operations, wherever located and in whatever form, electronic or otherwise.

## IX. ORDER FOR ALTERNATIVE SERVICE

Service of this Order, the Summons and Complaint, TRO Motion, and any other filings related to the TRO Motion in this case may be made by facsimile, mail, e-mail, delivery by courier or process server, or in any other manner authorized by Rule 5 of the Federal Rules of Civil Procedure and may be made on any registered agent, officer, or director of AmeriStar and Relief Defendants, or on counsel that has agreed to accept service.

## X. ORDER FOR PRELIMINARY INJUNCTION HEARING

A.  The SEC's TRO Motion is also deemed to be a motion for a preliminary injunction order, and the SEC is not required to file or serve a separate motion for a preliminary injunction in order to seek the entry of a preliminary injunction under Federal Rule of Civil Procedure 65.

B.  The Court will consider all materials filed by the SEC in connection with its TRO Motion to have been filed in connection with the SEC's motion for a preliminary injunction. The SEC shall be permitted, but is not required, to file a supplemental brief and supporting exhibits in advance of any preliminary injunction hearing.

C.  AmeriStar or Relief Defendants wishing to be heard on this matter may appear in this Court, on the SEC's motion for preliminary injunction, before the Honorable Judge Kelly H. Rankin, at 3:00 p.m. on the 20th day of September, in Courtroom 3 of the United States District Court in Cheyenne to show cause, if there be any, why this Court should not enter a preliminary injunction and order preliminary relief against them, pursuant to Rule 65 of the Federal Rules of Civil Procedure, extending the temporary relief granted in this Order pending a final adjudication on the merits.

D.  AmeriStar or Relief Defendants shall deliver any opposing papers in response to the Order to Show Cause above no later than 72 hours before any scheduled hearing on the motion for preliminary injunction. AmeriStar or Relief Defendants shall email their response to SEC counsel. The SEC shall have until 24 hours before any preliminary injunction hearing to file and

serve by the most expeditious means available, including email, any reply papers on AmeriStar, Relief Defendants, or their counsel, if counsel shall have made an appearance.

## XI.     ORDER FOR RETAINING JURISDICTION

The Court shall retain jurisdiction of this matter for all purposes. Pursuant to Federal Rule of Civil Procedure 65(c), no security is required of the SEC.

Dated this <u>9th</u> day of September, 2024.

_____
Kelly H. Rankin
United States District Judge