Eric J. Heimann
United States Attorney
C. Levi Martin (WY Bar #6-3781)
Assistant United States Attorney
P.O. Box 668
Cheyenne, Wyoming 82003
Telephone: (307) 772-2124
christopher.martin@usdoj.gov

Jodanna L. Haskins
Terry R. Miller
United States Securities and Exchange Commission
1961 Stout Street, 17th Floor
Denver, Colorado 80294
Telephone: (303) 844-1000
haskinsjo@sec.gov
millerte@sec.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>               Plaintiff,<br>   v.<br><br>AMERISTAR, LLC,<br><br>               Defendant,<br><br>and<br><br>AMERISTAR MK Ltd. Liability Company, FRED W. FREITAG IV, and HIGHLINE GOLD INC. a/k/a HIGHLINE GOLD LLC a/k/a HIGHLINE GOLD CORPORATION LLC,<br><br>               Relief Defendants. | Civil No. 2:24-cv-00169-KHR |

### MOTION FOR DEFAULT JUDGMENT AS TO LIABILITY AGAINST DEFENDANT AMERISTAR, LLC

1

Plaintiff United States Securities and Exchange Commission ("SEC") respectfully moves the Court for entry of default judgment as to liability against Defendant AmeriStar, LLC ("AmeriStar") pursuant to Fed. R. Civ. P. 55(b)(2). The Clerk of Court entered a notice of default against AmeriStar on December 10, 2024. [ECF No. 32.]

## INTRODUCTION

Acting through one or more unknown actors, AmeriStar raised over $3.6 million from at least 22 investors. [*Complaint*, ECF No. 1, ¶ 4.] AmeriStar falsely promised these and other potential investors an income stream derived from a program involving certificates of deposit ("CDs"). [*Id.* at ¶ 2.] AmeriStar claimed it would use investor funds to generate profits based on the combination of returns on CDs purportedly insured by the Federal Deposit Insurance Corporation ("FDIC"), and fees paid to AmeriStar by borrowers who AmeriStar claimed to help get loans from banks by increasing the borrower's creditworthiness. [*Id.*] AmeriStar claimed these investments would earn roughly double the rate of return on a typical CD and be FDIC-insured. [*Id.*]

Contrary to what it promised investors, AmeriStar did not use investor funds to purchase CDs. [*Id.* at ¶ 5.] Rather, it diverted investor money to bank accounts controlled by Relief Defendant Fred W. Freitag, IV ("Freitag") and another entity and then told Freitag what to do with the funds. [*Id.*] Large amounts of investor funds were then used to purchase precious metals—not CDs—that were ultimately sent to Relief Defendant HighLine Gold, Inc. a/k/a HighLine Gold LLC a/k/a HighLine Gold Corporation, LLC ("HighLine Gold"). [*Id.*]

Ameristar was managed and controlled by one or more unknown actors. [*Id.* at ¶ 1.] To provide an air of legitimacy to the scheme, and to conceal their identities, the unknown actors who operate AmeriStar stole and misused the identities of individuals who they claimed were the

President and a Director of AmeriStar but, in fact, have no affiliation with the company. [*Id.* at ¶ 6.] AmeriStar also falsely claimed that it works with well-known banks and is registered with the SEC. [*Id.*] As of July 2024, AmeriStar stopped answering phone calls from investors or returning their emails. [*Id.* at ¶ 4.]

The SEC seeks default judgment as to AmeriStar's liability. Specifically, the SEC seeks a default judgment that AmeriStar violated Sections 5(a) and (c) and Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and (c); 77q(a)], and Section 10(b) of the Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. The relief requested herein would resolve the issue of liability on all claims asserted against AmeriStar in the Complaint.

As to remedies for AmeriStar's violations, the SEC seeks injunctive relief, disgorgement, and civil penalties against AmeriStar. [ECF No. 1.] However, because the analysis and facts involved in appropriate remedies for AmeriStar overlaps with those involved with the Relief Defendants, and at least one Relief Defendant has appeared and indicated he will oppose the SEC's request for remedies as to him, the SEC will seek all remedies in one motion after AmeriStar's liability is determined.

## UNDISPUTED FACTS

The clerk entered default against AmeriStar under Fed. R. Civ. P. 55(a) on December 10, 2024. [ECF No. 32.]

AmeriStar is a Wyoming LLC that purported to have business addresses in both Sheridan and Cheyenne, Wyoming, as well as in Vernon Hills, Illinois. [ECF No. 1, ¶ 11.] Ameristar was managed and controlled by one or more unknown actors. [*Id.* at ¶ 1.]

3

Between August 2023 and August 2024, AmeriStar solicited the public to invest in its securities through websites and social media, including Facebook and Instagram. [ECF No. 1, ¶ 17.] Through these channels, AmeriStar claimed it offered high yield, FDIC-insured investments. [*Id.* at ¶¶ 18, 20.] More specifically, AmeriStar's website claimed it was offering securities that combined the return from its purchase of CDs with fees from its purported "courtesy deposit" program. [*Id.* at ¶ 18.] AmeriStar told investors they could essentially double the typical rate of return for a CD by investing with AmeriStar's "courtesy deposit" program because AmeriStar would both purchase the CD (which would generate interest payments) and use that CD to generate a fee from businesses looking to borrow money from a bank. [*Id.* at ¶¶ 41-43]. These businesses would purportedly pay AmeriStar this fee if AmeriStar would purchase CDs from a bank because, AmeriStar claimed, its "courtesy deposit" would cause the bank to look favorably on the business' loan application. [*Id.* at ¶ 25.]

AmeriStar offered and sold these investments in the form of notes [*id.* at ¶ 30], which are securities under federal law.[1] [*Id.* at ¶ 76.] These notes stated that repayment of the principal investment is due by a certain date and that AmeriStar will make monthly interest payments based on a specified annualized rate of return. [*Id.* at ¶ 31.] AmeriStar's offer and sale of its securities was an unregistered securities offering. [*Id.* at ¶¶ 82-85.]

This scheme was a fraud: AmeriStar did not purchase the CDs for investors or make "courtesy deposits" for those investors as promised. [*Id.* at ¶ 40.] Instead, investor money flowed into accounts of Relief Defendants and, as the unknown actors operating AmeriStar knew and

---

[1] Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act define "security" to include, among other things, any "note." [*Id.* at ¶ 77.]

intended, a large amount of investor money was sent to companies that sell precious metals. [*Id.* at ¶¶ 41, 45.]

AmeriStar also conducted an unregistered securities offering.

I.     **Facts Demonstrating Securities Fraud**

As detailed below, AmeriStar made materially false and misleading statements claiming it was using investor funds to purchase FDIC-insured CDs, and further claimed that each account was fully insured because it structured CDs so that no account would exceed the $250,000 limit on FDIC insurance. [ECF No. 1, ¶¶ 32-49.] At the time AmeriStar made the false and misleading statements, it knew or was reckless in not knowing and should have known that such statements were false and misleading. [*Id.* at ¶ 45.] Additionally, AmeriStar used interstate commerce in connection with the securities fraud, including disseminating misstatements via email, websites, and social media. [*Id.* at ¶ 49.]

AmeriStar also engaged in additional deceptive conduct (1) by making false and misleading statements and engaging in other deceptive acts (2) when offering and selling securities. [*Id.* at ¶¶ 50-75.]

    A.     **AmeriStar Made False and Misleading Statements.**

On websites, social media, and in other investor materials, AmeriStar claimed it was using investor funds to purchase FDIC-insured CDs, and further claimed that each account was fully insured because it structured CDs so that no account would exceed the $250,000 limit on FDIC insurance. [ECF No. 1, ¶¶ 32-38]. These statements were false and misleading because AmeriStar did not purchase CDs with investor money. [*Id.* at ¶ 40.] Instead, AmeriStar used investor money to make large payments to companies that sell precious metals and to pay Freitag and other entities and individuals. [*Id.* at ¶ 41.] The statements were also false and misleading

because AmeriStar investment funds were often held in bank accounts with balances over $250,000, rendering those accounts *not* fully FDIC-insured.[2] [*Id.* at ¶ 42.]

AmeriStar's statements concerning the intended use of investor funds were false and misleading at the time they were made because AmeriStar did not intend to purchase CDs with investor funds. [*Id.* at ¶ 43.] AmeriStar's conduct demonstrates a knowing pattern in which it raised funds through fraudulent statements and then misused those funds. [*Id.*]

The misrepresentations concerning the use of investor funds were material to investors and potential investors. [*Id.* at ¶ 46.] Investors reasonably understood that the profit promised by AmeriStar will be made possible by the purchase of CDs insured by the FDIC as part of AmeriStar's purported "courtesy deposit" program. [*Id.*] It would be important to reasonable potential investors' decision to invest to know that AmeriStar would not purchase CDs and that their investments would not be insured by FDIC insurance. [*Id.*] AmeriStar obtained money from investors by means of these misrepresentations. [*Id.* at ¶ 49.]

**B.     AmeriStar Engaged in Deceptive Conduct.**

Through the conduct described above, AmeriStar employed a device, scheme, and artifice to defraud investors by making materially false and misleading statements about the use of investor money and AmeriStar's misuse of investor money. [ECF No. 1, ¶ 50.] AmeriStar also committed the following additional deceptive acts in furtherance of this scheme:

*First*, AmeriStar falsely touted that two purportedly seasoned financial professionals—Eddie Britton and Therese Hoard—held leadership positions at the company. [*Id.* at ¶¶ 51-52,

---

[2] In a letter to AmeriStar and Highline Gold dated on or about March 18, 2024, the FDIC informed AmeriStar that certain statements on its website and on social media contained "apparent misrepresentations about FDIC deposit insurance," including AmeriStar's claim on its website that investments in the CD program are FDIC insured. [*Id.* at ¶ 44.]

54.] In fact, neither Mr. Britton nor Ms. Hoard has ever been associated with AmeriStar. [*Id.* at ¶¶ 53, 55, 71, 73.] This conduct is also deceptive because AmeriStar does not disclose the individuals who actually control and operate the company, further evading responsibility for what AmeriStar told investors about the use of their funds and what it did with those funds. [*Id.* at ¶¶ 56-57.]

*Second*, AmeriStar stated in investor materials that it worked with specific banks and included the logos for four well-known banks to bolster its marketing materials. [*Id.* at ¶ 58.] This was deceptive because AmeriStar did not work with these banks to purchase CDs or to operate its "courtesy deposit" program. [*Id.* at ¶ 59.] In fact, in January 2024, one of the banks mentioned in AmeriStar's offering materials sent AmeriStar a letter demanding that AmeriStar immediately cease using its tradename and trademark on AmeriStar's website and in marketing materials. [*Id.* at ¶ 60.] In March 2024, another well-known bank sent a letter to AmeriStar also demanding the company cease using its tradename and trademark on AmeriStar's website and in marketing materials. [*Id.* at ¶ 61.]

*Third*, while AmeriStar promissory notes and a private placement memorandum ("PPM") explained the notes were not registered pursuant to the Securities Act, AmeriStar told investors and potential investors that *AmeriStar itself* was registered with the SEC. [*Id.* at ¶ 62.] This was deceptive because neither AmeriStar nor any AmeriStar securities offering was registered with the SEC. [*Id.* at ¶ 63.]

*Fourth*, AmeriStar submitted a fraudulent Form D to the SEC.[3] [*Id.* at ¶ 65.] On or about July 28, 2023, AmeriStar submitted a Form ID[4] to gain access to file on the Electronic Data Gathering, Analysis, and Retrieval ("EDGAR") system, a system for companies and others submitting documents under the Securities Act and the Exchange Act, among others. [*Id.* at ¶¶ 64, 66-67.] This form was purportedly signed by Mr. Britton, and the form listed him as a "Contact for SEC Account Information and Billing Invoices." [*Id.* at ¶ 68.] But Mr. Britton did not sign the Form ID. [*Id.* at ¶ 69.] In another submission to the SEC, on or about August 2, 2023, AmeriStar submitted a Form D to the SEC through the EDGAR system. [*Id.* at ¶ 70.] Again, the Form D was purportedly signed by Mr. Britton. [*Id.*] The Form D also falsely listed Mr. Britton and Ms. Hoard as an executive and director of AmeriStar, respectively, but neither Mr. Britton nor Ms. Hoard were associated with AmeriStar. [*Id.* at ¶¶ 70-73.] The Form D also stated that AmeriStar's principal place of business is 1712 Pioneer Avenue, Suite 500 in Cheyenne, Wyoming. [*Id.* at ¶ 74.] But AmeriStar does not conduct business at this address. [*Id.*] AmeriStar touted the fact that it filed a Form D to investors in marketing materials, on social media, and on its website. [*Id.* at ¶ 70.] The Form D is deceptive because it falsely assures investors that AmeriStar is registered with the SEC. [*Id.* at ¶ 75.] It is also deceptive because it is meant to obscure and conceal the individuals who control and operate AmeriStar and to evade responsibility for ArneriStar's conduct.

---

[3] A Form D is used to file a notice of an exempt offer of securities with the SEC. [ECF No. 1, ¶ 64.] Its purpose is to notify the SEC of an unregistered offering. [*Id.*]
[4] A completed Form ID, Uniform Application for Access Codes ("Form ID"), is required to obtain access to EDGAR. [*Id.* at ¶ 66.] EDGAR access is necessary to file a Form D. [*Id.*]

      **C.**    **AmeriStar Acted with Scienter.**

Each of the above statements was false when made, and the unknown actors controlling AmeriStar knew or were reckless in not knowing and should have known that the statements were false and misleading. [ECF No. 1, ¶ 45.] In addition, the unknown actors controlling AmeriStar knew or were reckless in not knowing and should have known that their conduct was deceptive. [*Id.*] As described above, AmeriStar's conduct, as its controlling unknown actors knew and intended, created a knowing pattern in which it raised funds through fraudulent statements and then misused those funds. [*Id.* at ¶¶ 43, 45]

      **D.**    **AmeriStar Conducted an Unregistered Securities Offering.**

AmeriStar stated that it was offering securities in a Form D submitted to the SEC on August 2, 2023. [ECF No. 1, ¶ 79.] AmeriStar claimed it is a pooled investment fund that was offering equity securities (not notes) for sale with a total offering amount of $10 million. [*Id.*] AmeriStar also claimed in that form that its offering was exempted from the securities registration requirements based on Rule 506(b ). [*Id.*] The PPM, however, stated that the investments offered by AmeriStar were unregistered, unsecured securities in the form of notes. [*Id.* at 81.] Here, there was no registration statement in effect or filed as to these securities. [*Id.* at ¶ 84.] Moreover, AmeriStar did not take reasonable steps to verify that all purchasers were accredited, and AmeriStar offered and sold securities to at least two individuals who do not believe they are accredited. [*Id.* at ¶ 85.]

## ARGUMENT

**I.**    **THE CLERK OF COURT PROPERLY ENTERED DEFAULT AGAINST AMERISTAR.**

The clerk entered default against AmeriStar under Fed. R. Civ. P. 55(a) on December 10, 2024. [ECF No. 32.] Entry of default was proper because the SEC filed the Complaint [ECF No.

9

1] on September 4, 2024, and AmeriStar was served on September 5, 2024 [ECF No. 10]. AmeriStar failed to retain counsel, answer, respond, appear at the two preliminary injunction hearings, held on September 20 and October 4, 2024, or otherwise defend this case.

## II. THE SEC'S WELL-PLEADED FACTS SUPPORT A JUDGMENT THAT AMERISTAR COMMITTED SECURITIES FRAUD.

Upon the entry of default, the well-pleaded allegations in the Complaint are deemed admitted. *Motamoa Holdings Ltd. v. Vl Media LLC*, Case No. 21-CV-198-NDF, 2023 WL 2047509, at *4 (D. Wyo. Feb. 16, 2023) (citing *Richfield Hosp., Inc. v. Shubh Hotels Detroit, LLC*, No. 10-CV-00526-PAB-MJW, 2011 WL 3799031 (D. Colo. Aug. 26, 2011)). The Court has previously found that the SEC presented evidence demonstrating a substantial likelihood of success on the merits of its fraud claims. [ECF No. 13, pp. 7-13.] However, it is for the Court to determine whether the admitted facts support a legitimate cause of action. *Id.* (citing *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010)). Moreover, the well-pleaded facts are deemed admitted and support a judgment on the claims against AmeriStar. *Id.*

### A. The Court Has Jurisdiction.

To grant default judgment, the Court must first determine whether it has subject matter and personal jurisdiction over AmeriStar. *Christian v. OneM Comms. Ltd.*, Case No. 22-CV-00024-NDF, 2023 WL 7385609, at *1 (D. Wyo. Sept. 20, 2023). The Court has subject matter jurisdiction over this matter under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)-(e) and 78aa], which generally provide jurisdiction to adjudicate claims arising under the Securities Act and Exchange Act, respectively. [ECF No. 1, ¶ 8.] The Court also has personal jurisdiction under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. §§ 78aa(a)] because AmeriStar was served with process [ECF No. 10] and because AmeriStar is a

10

Wyoming limited liability company ("LLC") and certain transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within Wyoming. [*Id.* at ¶¶ 9-10.]

    **B.    AmeriStar Made Materially False and Misleading Statements and Omissions in Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder and Section 17(a)(2) of the Securities Act.**

As to the SEC's claims for violations of the antifraud provisions of the Securities Act and the Exchange Act, the SEC has alleged the necessary facts—admitted by AmeriStar by its default—to show that AmeriStar violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5] and Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)]. [ECF No. 1, ¶¶ 94-99.] Both claims require substantially similar proof. *SEC v. Wolfson*, 539 F.3d 1249, 1256 (10th Cir. 2008). The SEC must establish that AmeriStar made: (1) "a misrepresentation or omission (2) of material fact, (3) with scienter (for Section 10(b)) or negligence (for Section 17(a)(2)), (4) in connection with the purchase or sale of securities, and (5) by [means of interstate commerce]." *Id.*; *see also SEC v. GenAudio Inc.*, 32 F.4th 902, 921 (10th Cir. 2022) ("Section 10(b) (as well as Rule 10b-5) requires that the SEC establish at least recklessness, whereas it need only demonstrate negligence to establish a violation of § 17(a)(2)."). Unlike a private plaintiff, the SEC need not prove reliance or investor loss. *Wolfson*, 539 F.3d at 1256.

As outlined above and more fully detailed in the Complaint, AmeriStar—through default—has admitted to (1) a misrepresentation or omission [ECF No. 1, ¶¶ 32-45] (2) of material fact [*id.* at ¶ 46], (3) with scienter [*id.* at ¶ 45], (4) in connection with the purchase and sale of securities [*id.* at ¶ 47], and (5) by means of interstate commerce [*id.* at ¶ 48]. *Wolfson*, 539 F.3d at 1256. AmeriStar also admitted—by its default—that certain unknown actors who

11

carried out AmeriStar's fraudulent acts did so with scienter. [ECF No. 1, ¶¶ 12, 40, 42-43, 45.][5] Scienter of a "corporate officer or agent acting within the scope of authority is attributable to the corporation." *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1106-07 (10th Cir. 2003) (citations omitted) (holding that allegations which are sufficient to show scienter on behalf of the President and CFO of a company are also sufficient to show the company acted with scienter.)

Finally, the investments sold by AmeriStar (the promissory notes) are "notes" within the meaning of Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act. [ECF 1, ¶¶ 77-81; *see also* ECF No. 5 at 26-28.] These investments are therefore securities. *Id.*; *see Reves v. Ernst & Young*, 494 U.S. 56, 67 (1990); *SEC v. Thompson*, 732 F.3d 1151, 1159 (10th Cir. 2013).

Accordingly, the Court should find that AmeriStar violated Section 10(b) of the Exchange Act, Rule 10b-5 thereunder, and Section 17(a)(2) of the Securities Act.[6]

### C. AmeriStar Engaged in Deceptive Conduct in Violation of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) Thereunder and Section 17(a)(1) and (3) of the Securities Act.

The SEC has also alleged the necessary facts—admitted by AmeriStar by its default—to show that AmeriStar's fraudulent conduct violates Section 10(b) and Rules 10b-5(a) and (c) thereunder of the Exchange Act and Sections 17(a)(1) and (3) of the Securities Act because AmeriStar is engaging in deceptive conduct. [ECF No. 1, ¶¶ 96-99.] To prove fraud under Rule 10b-5(a) and (c) and Sections 17(a)(1) and (3), the SEC must prove that AmeriStar, directly or

---

[5] Although negligence suffices for violations of Securities Act Sections 17(a)(2) and (3), proof of this higher scienter standard establishes violations of those sections. *See GenAudio*, 32 F.4th at 931. Nonetheless, AmeriStar has also admitted—through default—to acting negligently. [ECF No. 1, ¶ 45.]

[6] Securities Act Section 17(a)(2) also requires a defendant obtain money or property by means of false or misleading statements. *Wolfson*, 539 F.3d at 1256. This element is also met. [*See* ECF No. 1, ¶¶ 40, 49.]

indirectly: (1) committed a deceptive or manipulative act; (2) in furtherance of the alleged scheme to defraud; (3) with scienter (for Section 10(b) and Section 17(a)(1)) or negligence (for Section 17(a)(3)). *SEC v. McDuffie*, No. 12-cv02939, 2014 WL 4548723, at *10 (D. Colo. Sept. 15, 2014).

As outlined above and more fully detailed in the Complaint, AmeriStar—through default—has admitted to (1) committing a deceptive or manipulative act [ECF No. 1, ¶¶ 50-56, 58, 62-74]; (2) in furtherance of the alleged scheme to defraud [*id.* at ¶ 6, 50, 57, 75]; (3) with scienter or negligence [*id.* at ¶¶ 59-61, 63]. *McDuffie*, 2014 WL 4548723, at *10. As explained above with regard to AmeriStar's false and misleading statements and omissions, AmeriStar has also admitted—by its default—that certain unknown actors who carried out AmeriStar's fraudulent acts did so with scienter. Here, the unknown actors intended to defraud investors when engaging in the deceptive conduct alleged in the Complaint and admitted by AmeriStar. [*Id.* at ¶¶ 12, 50-75; *see also* ECF No. 5 at 24-26.] The scienter of those corporate officers or agents is attributable to AmeriStar. [*Id.* at ¶ 45.]

Accordingly, the Court should find that AmeriStar violated Section 10(b) of the Exchange Act, Rule 10b-5(a) and (c) thereunder, and Sections 17(a)(1) and (3) of the Securities Act.

## C. THE SEC'S WELL-PLEADED FACTS SUPPORT A JUDGMENT THAT AMERISTAR CONDUCTED AN UNREGISTERED SECURITIES OFFERING.

Through the conduct detailed above and in the Complaint, AmeriStar also violated Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]. These sections "make it unlawful to offer or sell a security in interstate commerce if a registration statement has not been filed as to that security, unless the transaction qualifies for an exemption from registration." *SEC v. Gordon*, 522 F. App'x 448, 450 (10th Cir. 2013) (quoting *SEC v. Platforms Wireless Int'l*

13

*Corp.*, 617 F.3d 1072, 1085 (9th Cir. 2010)). "To make a prima facie case under §§ 5(a) and (c), the SEC must show that: '(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale.'" *GenAudio*, 32 F.4th at 939 (quoting *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017) (quoting *SEC v. Cont'l Tobacco Co.*, 463 F.2d 137, 155 (5th Cir. 1972)). While there are exemptions that can be asserted as affirmative defenses, the burden of proof is upon the party claiming the exemption's benefit. *Id*. (citing *Quinn & Co. v. SEC*, 452 F.2d 943, 945-46 (10th Cir. 1971)).

  Here, the SEC has alleged—and AmeriStar has admitted by its default—that AmeriStar offered and sold securities in the form of notes [ECF No. 1, ¶¶ 76-77] by using the instruments of interstate commerce, including but not limited to telephone and internet [*id.* at ¶ 83], and that there was no registration statement in effect or filed as to these securities [*id.* at ¶ 84]. AmeriStar also has not proven that any exemption applies. Accordingly, the Court should find that AmeriStar violated Sections 5(a) and (c) of the Securities Act.

## **CONCLUSION**

  WHEREFORE, for the reasons above, the SEC respectfully requests that the Court enter a judgment finding that AmeriStar, LLC violated the federal securities laws as alleged. A proposed order is filed contemporaneously herewith.

Dated January 16, 2025.

          Respectfully submitted,

      By: */s/ Jodanna L. Haskins*
          JODANNA L. HASKINS
          TERRY R. MILLER
          United States Securities and Exchange Commission

          C. LEVI MARTIN
          Assistant United States Attorney

          *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I have mailed or served the foregoing document or paper to the following non-CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

AmeriStar, LLC
c/o Cloud Peak Law, LLC,- Registered Agent
1095 Sugar View Drive, Suite 500,
Sheridan, WY 82801

AmeriStar MK Ltd.
c/o Cloud Peak Law, LLC,- Registered Agent
1095 Sugar View Drive, Suite 500,
Sheridan, WY 82801

Fred Freitag
1041 Applejack Drive
Gibsonia, PA 15044

Highline Gold Inc.
c/o Wyoming Secretary of State
Attn: Business Division
State Capitol Bldg., Room 110
200 West 24th Street
Cheyenne, WY 82002

*s/ Jodanna L. Haskins*
United States Securities and Exchange Commission